IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2012

**STATE OF TENNESSEE V. LEROY DOWDY**

**Direct Appeal from the Circuit Court for Stewart County**
**No. 41989     Larry Wallace, Judge**

**No. M2011-00939-CCA-R3-CD - Filed May 17, 2012**

The Defendant, Leroy Dowdy, pled guilty to vehicular homicide by recklessness, leaving the scene of an accident resulting in death, and driving on a revoked license. After a sentencing hearing, the trial court sentenced the Defendant to five years and six months for the vehicular homicide conviction, two years for the leaving the scene of an accident resulting in death conviction, and six months for the driving on a revoked license conviction. The trial court ordered the sentences to run consecutively, for an effective sentence of eight years. On appeal, the Defendant argues that the trial court's sentence is excessive. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

William B. Lockhart III and Drew W. Taylor, Ashland City, Tennessee, for the appellant, Leroy Dowdy.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne Lockert-Mash, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

1

A Stewart County grand jury indicted the Defendant for vehicular homicide by intoxication, leaving the scene of an accident resulting in death, and driving on a revoked license. At the Defendant's March 2010 plea submission hearing, the Defendant entered a plea of guilty to a reduced charge of vehicular homicide by recklessness and to the other counts, as charged, in the indictment. Pursuant to the Defendant's plea agreement, his sentences were to be determined by the trial court following a sentencing hearing.

At the sentencing hearing, Trooper Steve Becker testified that he investigated the June 30, 2008 vehicular homicide of Joey Dwayne Holmes. Trooper Becker said that, when he arrived at the scene, he observed the victim lying in the middle of the roadway. A local deputy informed Trooper Becker that Jason Gillespie, the Cumberland City Police Chief, had seen the man who hit the victim and that Chief Gillespie went to find the driver and bring him back to the scene. Shortly thereafter, Chief Gillespie returned with the Defendant, who was in a red Chevy Tahoe. The right rear quarter panel on the Tahoe was dented and the window was broken. The Defendant explained to Trooper Becker that he was driving to get a pack of cigarettes when the victim "cut right in front of him." The Defendant told Trooper Becker that he "thought he had an accident, got scared and then took off." Trooper Becker testified that the Defendant never mentioned a vehicle, other than the victim's, being in the vicinity at the time of the accident.

Trooper Becker testified that the Defendant wore a white T-shirt and "didn't look right." He described the Defendant's eyes as "bloodshot and watery." The trooper recalled that the Defendant had difficulty comprehending "what was going on" and "just kind of stood there and stared off at a ditch." Trooper Becker had to ask the Defendant questions multiple times in order to get the Defendant to respond. During their conversation, the Defendant asked, "[D]id I kill that man?" He made no other reference to the victim. Because the Defendant was involved in a vehicular homicide, his blood was drawn and tested. The test results indicated that cocaine was in the Defendant's system. Trooper Becker confirmed that the victim died at the scene of the accident.

On cross-examination, Trooper Becker testified that the victim was driving a motorcycle at the time of the accident. Trooper Becker agreed that there might have been reasons other than drug use for the Defendant's behavior on the day of the accident. He further agreed it is common for someone involved in an accident in which another person dies to "not be thinking straight."

Bill Parsons, the Defendant's probation officer for unrelated drug sale convictions, testified that he prepared the presentence report in this case. During his interview with the Defendant, the Defendant told Parsons that, just before the accident, while he was waiting for a semi-truck to pass, other cars were honking their horns and pulling around him. The

2

Defendant reported having worked as a laborer and farm hand in local area counties since 1971. The Defendant also reported "severe problems with his legs and back causing difficulty with walking." The Defendant told Parsons that he last used alcohol the month before and last used cocaine in 1991. Parsons asked the Defendant about the results of the blood test indicating cocaine was in his system at the time of the accident, and the Defendant replied that he "didn't want to make a comment about it." The Defendant indicated that he lived with his daughter and granddaughter and helped support them. In preparing the presentence report, Parsons also spoke with the victim's wife, who reported a $400 bill for the ambulance and a bill for $9,529.33 for funeral expenses incurred as a result of the victim's death. The motorcycle, worth $16,500, was assessed as a loss and covered under insurance.

On cross-examination, Parsons indicated that the Defendant reported a seventh grade education level. Parsons explained that he wrote down the Defendant's answers during the interview because the Defendant could not read or write. Parsons agreed that, during the interview, the Defendant had a hard time comprehending some of the questions asked, requiring Parsons to ask the question two or three times. Parsons said that he observed the Defendant having difficulty walking but that the Defendant walked "five or six miles" to every one of his probation appointments and meetings. Parsons agreed that the toxicology report indicated "less than .05 UG/ML" of cocaine in the Defendant's system. Parsons said that the Defendant denied having a drinking or drug problem.

Debbie Holmes, the victim's spouse, testified that they had been married thirty-two years and had a son. Holmes testified that her husband was 51 years old at the time of his death and owned his own siding and window company.

Patricia Barnes, the victim's younger sister, testified that she missed her only brother. She said that she did not believe the Defendant intentionally killed her brother and that she was not asking the trial court "to [ ] put [him] away for his life." She did think that the victim would have wanted the Defendant to have "some sit-down time to maybe pick up the Bible."

Cynthia Boyles, the victim's older sister, testified that she was one of six sisters in their family and the victim was their only brother. Boyles said that she believed the Defendant needed to be incarcerated to "learn everything that needs to be learned."

Trena Stone, one of the victim's older sisters, testified that she did not think the Defendant should be incarcerated for "his life" but should get "enough time to sit back and think."

3

Angie Ladd, the Defendant's daughter, testified that the Defendant lived with her and her daughter. Ladd said that the Defendant did not have a job but received disability and was available to help her around the house every day. Ladd said that she was aware of the Defendant's probation at the time of the accident but that she did not know his license was suspended. Ladd said that, on the day of the accident, the Defendant walked to a cousin's home and borrowed a vehicle. She agreed she would help ensure he did not drive if the trial court ordered a probated or community corrections sentence. She said that the Defendant "never drove" anymore. Ladd agreed that she did not have a driver's license but explained that she lived behind her aunt who would drive her or the Defendant whenever needed.

Dora Kirkland, the Defendant's sister, testified that she worked at the TVA Cumberland City plant, testing equipment. Kirkland said that if the Defendant were placed on probation she would help ensure he complied with the terms of probation. She confirmed that she was willing to drive the Defendant where he needed to go.

Mary Turner, the Defendant's sister, asked the trial court to order the Defendant to serve a probated sentence. Turner explained that she was concerned about the Defendant's physical and mental state. Turner said that the Defendant had expressed remorse to her about the accident. Turner said that she owned her business and had some flexibility in her schedule, which would enable her to help the Defendant. She stated her willingness to help the Defendant meet the appointments or obligations of probation.

The Defendant testified that he was sixty years old and that he had rheumatoid arthritis, high blood pressure, and a "bad back." He said that these "ailments" kept him in chronic pain, for which he was prescribed pain medication. The Defendant said that he completed the seventh grade, and his ability to read and write was "not too good." The Defendant said that he lived with his daughter in Cumberland City and had family in the same area. The Defendant said that he no longer drives, so he either asks a friend to drive him or he walks to his probation meetings.

The Defendant said that on the day of the accident he was at the top of a hill preparing to turn left into the Sportsman's Market. As he waited for a break in the traffic to make a left turn, four or five cars backed up behind him, two of which pulled around the Defendant and passed him on the right. In the oncoming lane, a tractor trailer truck passed the Defendant, who then made a left hand turn. As he made the left turn, he felt something hit the back of the truck. He said this "shocked" him, so he turned the truck around and drove to "Robert" to tell him that he thought he had "hit somebody." "Robert" instructed him to return to the accident where the Defendant found the chief of police, Jason Gillespie, and explained what had happened. The Defendant then spoke with other authorities at the scene about the accident. The Defendant recalled asking Trooper Becker if the victim had died. Upon

4

learning of the victim's death, the Defendant said that he "just stood there in shock. I couldn't go - - I just looked down at the ground and stood there. I just couldn't do nothing." The Defendant denied seeing the victim when he made the left-hand turn into the Sportsman's Market.

On cross-examination, the Defendant denied having seen a "motorcycle torn apart" or the victim lying in the roadway as he drove away after the accident. The Defendant further denied any cocaine use on the day of the accident. He maintained that it had been two or three years since he used cocaine. Upon questioning by the trial court, the Defendant explained that the result of the blood test, which indicated cocaine in his system, was due to his touching cocaine with his hands. He maintained that he did not ingest cocaine in any manner and denied having an alcohol or drug problem.

At the conclusion of the hearing, the trial court, after considering applicable enhancement and mitigating factors, sentenced the Defendant as a Range I standard offender to serve five years and six months for his vehicular homicide by recklessness conviction, two years for his leaving the scene of an accident resulting in death conviction, and six months for his driving while license revoked conviction. The trial court ordered that the sentences run consecutively for an effective sentence of eight years. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant claims that the evidence was insufficient for the trial court to find enhancement factors and reject mitigating factors in imposing an effective sentence of eight years. Further, the Defendant argues that the evidence was insufficient to support consecutive sentencing in this case. The State responds that the Defendant has waived review of these claims by failing to include the guilty plea submission hearing transcript in the appellate record. Alternatively, the State asserts that the record supports the trial court's sentencing decisions.

We first address the State's assertion that the Defendant has waived our review for failure to include the guilty plea submission hearing transcript. It is the defendant's duty to compile a complete record for appeal. Tenn. R. App. P. 24(b). A panel of this Court recently held that the guilty plea hearing transcript is vital to a *de novo* review of sentencing and in the absence of an adequate record, we will presume the trial court's rulings were supported by sufficient evidence. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286, at *4 (Tenn. Crim. App., at Nashville, Dec. 8, 2011), *Perm. App. Granted* (Tenn. April 12, 2012). Another panel of this Court, however, concluded that, despite the absence of the guilty plea submission hearing transcript, the record was adequate

5

to afford appellate review. *State v. Anna M. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at \*5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011), *no Tenn. R. App. P. 11 application filed*. Based upon the specific facts of this case, we conclude that sufficient testimony regarding the nature of the Defendant's offenses was adduced at the sentencing hearing to allow this Court to evaluate the propriety of his sentences.

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d) (2010). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts (2010). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, the appellate court may not disturb the sentence even if a different result was preferred. T.C.A. § 40-35-103 (2010); *State v. Ross*, 49 S.W.3d 833, 847 (Tenn. 2001). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. *State v. Dean*, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); *State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

As we will explain in detail below, we conclude that the trial court improperly applied certain enhancement factors to some of the Defendant's sentences. As such, we review the Defendant's sentence *de novo* with no presumption of correctness. *See Ashby*, 823 S.W.2d at 169.

### A. Enhancement and Mitigating Factors

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2010); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). The Tennessee Code allows a sentencing court to consider the following enhancement factors, among others, when determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; . . .

6

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great; . . .

(8) The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; . . .

(10) The defendant had no hesitation about committing a crime when the risk to human life was high; . . .

(13) At the time the felony was committed, one (1) of the following classifications was applicable to the defendant:

   . . .

   (C) Released on probation;

T.C.A. § 40-35-114(1), (6), (8), (10), (13)(C) (2010). If an enhancement factor is not already an essential element of the offense and is appropriate for the offense, then a court may consider the enhancement factor in its length of sentence determination. T.C.A. § 40-35-114 (2010). In order to ensure "fair and consistent sentencing," the trial court must "place on the record" what, if any, enhancement and mitigating factors it considered as well as its "reasons for the sentence." T.C.A. § 40-35-210(e) (2010).

Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2010). The 2005 amendments, however, deleted, as grounds for appeal, a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. In summary, although this Court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2010); *Carter*, 254 S.W.3d at 343.

The trial court applied five enhancement factors: enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior; enhancement factor (6), that the amount of damage to property sustained by or taken from, the victim was particularly great; enhancement factor (8), that the Defendant, before sentencing, failed to comply with the conditions of a sentence involving release into the community; enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high; and enhancement factor (13), that the Defendant committed the

7

offenses while on probation. T.C.A. § 40-35-114(1), (6), (8), (10), (13)(C) (2010). The trial court found no applicable mitigating factors.

### 1. Enhancement Factors

The Defendant asserts that the evidence presented at the sentencing hearing was insufficient for the trial court to impose enhancement factors (1), (6), (8), (10) and (13). The State responds that the record supports the trial court's effective eight-year sentence. We agree with the State.

### a. Enhancement Factor (1)

Our review of the record reveals that the trial court correctly applied enhancement factor (1). The Defendant, who was sentenced as a Range I offender, had at least two prior felony convictions for sale of cocaine, for which he was convicted three months prior to these offenses. The trial court also noted the presence of "other criminal behavior", as evidenced by the Defendant's use of cocaine. This demonstrates that the Defendant had a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." *See* T.C.A. § 40-35-114(1) (2010). As such, the trial court properly applied enhancement factor (1) to the Defendant's convictions.

### b. Enhancement Factor (6)

The trial court applied enhancement factor (6), that the "personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great," to all of the Defendant's convictions. T.C.A. § 40-35-114(6) (2010).

After acknowledging that personal injury is an element of vehicular homicide, the trial court stated the following:

> There was testimony regarding property damage sustained and the Court does find that it was particularly great. Anything - - I believe it was $16,500 or greater, so - - plus the funeral expenses and those things would add to that. So, the Court does find Number 6 should apply as an enhancer because of that but not because of the personal injuries.

The trial court properly noted that enhancement factor (6) would not be applicable based upon the victim's death because this is inherent in the offense of vehicular homicide. The record indicates that the property damage in this case was well over $20,000. Therefore,

the trial court did not err in finding that the property damage sustained was particularly great. The Defendant is not entitled to relief as to this issue.

### c. Enhancement Factor (8)

The record reflects that the trial court applied enhancement factor (8), that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." T.C.A. § 40-35-114(8). The Defendant was convicted of two felony convictions three months before this offense. For these convictions, the Defendant was placed on supervised probation. As a result of the offenses in the present case, a probation violation warrant was issued for the two felony convictions. The Defendant waived his right to a hearing and admitted to the probation violations based upon the present convictions and the trial court found him in violation of his probation. Therefore, the trial court properly applied enhancement factor (8) to the Defendant's sentence.

### d. Enhancement Factor (10)

The trial court applied enhancement factor (10), that the Defendant had no hesitation about committing a crime when the risk to human life was high. As to this factor, the trial court stated at the sentencing hearing:

> The Court finds that defendant was under - - had some type of cocaine in his system, obviously, when this crime was committed. And in addition, he was driving without a - - illegally on a suspended license. And the Court finds that that should apply as an enhancer.

The Defendant contends that factor (10) was inappropriately applied because the State failed to prove that he "demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." Factor (10) is applicable when a high risk to human life is established by facts separate from those necessary to establish an element of the offense. *State v. Bingham*, 910 S.W.2d 448, 452 (Tenn. Crim. App. 1995). Such circumstances arise when a defendant creates a high risk to the life of a person other than the named victim. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997); *see also State v. Lambert*, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1997) (factor (10) applicable to sentence for vehicular homicide where, prior to striking the victims, the defendant recklessly drove through streets and sidewalks crowded with people); *State v. Jerry Douglas Franklin*, No. 01C01-9510-CR-00348, 1997 WL 83772, (Tenn. Crim. App., at Nashville, Feb. 28, 1997) (factor (10) applicable to sentence for vehicular homicide by intoxication where other drivers placed at risk) *perm. to app. denied*, (Tenn. Nov. 17, 1997). Notwithstanding, in *State v. Rhodes*, 917 S.W.2d 708, 714 (Tenn. Crim. App. 1995), this

Court held that enhancement factor (10) does not apply to vehicular assault where the record does not indicate that any other person was actually threatened by defendant's driving because "vehicular assault [unquestionably] reflects the legislature's appreciation of the substantial risk of and actual degree of harm that results from [the] caused injury."

The Defendant asserts and the State agrees that the proof in the record does not establish that there was a risk to someone other than the victim in this case. The Defendant made a left-hand turn resulting in the victim hitting the right rear quarter panel of the vehicle the Defendant was driving. The Defendant made a U-turn and continued to drive but there is no evidence of other vehicles or persons on the roadway. The unsupported testimony of the Defendant indicated that there were vehicles backed up behind him before he made the left-hand turn but, even taken as true, that fact alone would not evidence a high risk to human life. Therefore, the trial court should not have applied enhancement factor (10) to the Defendant's convictions.

### e. Enhancement Factor (13)(C)

The trial court applied enhancement factor (13)(C), that the Defendant was released on probation at the time the felonies were committed. Further, the trial court noted that it placed "a lot of weight on Number 13."

The Defendant admitted he was on probation at the time of these offenses, his daughter testified that the Defendant was on probation at the time of these offenses, and the preparer of the presentence report was the Defendant's probation officer for the prior probated sentences. The record supports the trial court's application of enhancement factor (13)(C).

### 2. Mitigating Factors

The Defendant contends that the trial court should have applied mitigating factors (1), (8), (11), and (13) under Tennessee Code Annotated section 40-35-113. The State counters that the trial court considered and rejected the Defendant's proffered mitigating factors.

As outlined above, the Sentencing Act requires this Court, in conducting its *de novo* review, to consider all mitigating factors applicable to the Defendant. *See* T.C.A. § 40-35-210 (2010); *State v. Herbert H. Foster*, W2007-02636-CCA-R3-CD, 2009 WL 275790, at *4 (Tenn. Crim. App., at Jackson, Feb. 3, 2009) *No Tenn. R. App. P. 11 application filed.* . Section 40-35-113 contains a non-exclusive list of mitigating factors that a trial court may apply to a defendant's sentence "if appropriate for the offense." T.C.A. § 40-35-113 (2010).

The list contains the following four mitigating factors that the Defendant argues apply to his sentence:

(6)     The defendant, because of youth or old age, lacked substantial judgment in committing the offense;

. . . .

(8)     The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;

. . . .

(11)     The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct;

. . . .

(13)     Any other factor consistent with the purposes of this chapter.

T.C.A. § 40-35-113(6), (8), (11) and (13) (2010). The burden of proving applicable mitigating factors rests upon the defendant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at * 6 (Tenn. Crim. App., at Knoxville, Sept. 18, 1995), *perm. app. denied* (Tenn. Feb. 5, 1996).

At the conclusion of the sentencing hearing, the trial court specifically rejected application of mitigating factors (6), (8), (11), and (13).

**a. Mitigating Factor (6)**

The trial court considered mitigating factor (6), as to whether the Defendant lacked substantial judgment due to his age, and found that the Defendant was capable of exercising judgment in choosing to illegally drive on a suspended license with cocaine in his system.

We agree with the trial court that the record does not support the application of this mitigating factor. The Defendant was fifty-nine at the time of the offense and testified that he suffered from rheumatoid arthritis, high blood pressure, and a bad back. There is nothing

11

in the record to indicate that his age impeded his judgment in these circumstances. Therefore, the trial court did not err when it refused to apply mitigating factor (6). The Defendant is not entitled to relief as to this issue.

### b. Mitigating Factor (8)

The trial court also considered mitigating factor (8), as to whether the Defendant had a mental or physical condition that reduced his culpability, and found that the Defendant was capable of exercising his judgment when he chose to drive on a suspended license with cocaine in his system. When determining the applicability of this mitigating factor, the sentencing court should consider "the defendant's age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the defendant's ability or inability to appreciate the nature of his conduct." *State v. Adams*, 864 S.W.2d 31, 33 (Tenn. 1993).

We agree with the trial court that the record does not support the application of this mitigating factor. The Defendant testified at the sentencing hearing that he was sixty years old, had completed the seventh grade, and did not read or write well. He also stated that he had rheumatoid arthritis, high blood pressure, and a bad back for which he was prescribed medication. Beyond this testimony, there is nothing in the record to indicate that the Defendant's age, short academic history, or his medical conditions in any way lessened his culpability as to these offenses. Therefore, the trial court did not err when it refused to apply mitigating factor (8). The Defendant is not entitled to relief as to this issue.

### c. Mitigating Factor (11)

The trial court considered whether the unusual circumstances of the incident indicated that the Defendant did not have a sustained intent to violate the law, and it found that the Defendant's history of criminal conduct and convictions within a short period of time indicated otherwise.

We agree with the trial court that the record does not support the application of mitigating factor (11). The Defendant pled guilty to two felony charges of sale of cocaine in March 2008 and was placed on supervised probation. Three months later, with cocaine in his system as well as with the knowledge that he was on probation, and without a valid driver's license, the Defendant borrowed a car and drove to a local market. Based upon the record, the trial court did not err in refusing to apply mitigating factor (11). The Defendant is not entitled to relief as to this issue.

### d. Mitigating Factor (13)

12

The trial court considered mitigating factor (13), any other factor consistent with sentencing principles, and found this factor inapplicable. The Defendant asserts that the trial court should have applied this factor based upon the Defendant's stated remorse for the accident.

The Defendant's sister testified that the Defendant had expressed remorse to her. During the sentencing hearing, when asked how he felt about the accident, the Defendant made the following statement:

> It's awful. It's an awful bad feeling to - - it's hurt me worse than it did them on the account - - I never encountered anything like that before in my life. I seen a lot of accidents around, but I never was in none like that and it just hurts me badly.

Later during his testimony, the Defendant expressed regret for the accident and stated he would "change it if [he] could."

This Court has held that remorse is a proper consideration under mitigating factor (13). *See State v. Thomas*, 755 S.W.2d 838, 845 (Tenn. Crim. App. 1988). This Court has held that an appellant's recognition of the wrongfulness of his actions and his expression of remorse supports some marginal consideration under mitigating factor (13). *See, e.g., State v. Huey Matthew Mooney*, III, No. 03C01-9502-CR-00050, 1996 WL 183931, at *15 (Tenn. Crim. App. April 18, 1996), *perm. app. denied*, (Tenn. Oct. 28, 1996). In this case, however, the Defendant denied any drug use in three years or a "drug problem" despite a blood test indicating cocaine in his system at the time of the accident. The Defendant's failure to fully take responsibility for his conduct related to the victim's death supports the trial court's refusal to apply this mitigating factor. The Defendant is not entitled to relief as to this issue.

### 3. *De Novo* Review

In conducting our *de novo* review of the Defendant's sentence, we consider the Defendant's presentence report, the victim impact letters and statements introduced during his sentencing hearing, the nature and circumstances of his crime, and the applicable enhancement and mitigating enhancement factors. *See* T.C.A. § 40-35-210 (2010).

The trial court sentenced the Defendant as a Range I, standard offender, to an effective sentence of eight years for his convictions. *See* T.C.A. § 40-35-112(a)(1) (2010). The trial court meticulously considered the appropriate sentencing considerations and the circumstances of these offenses. Although the trial court incorrectly applied one enhancement

factor when it sentenced the Defendant, the four enhancement factors that were correctly applied by the trial court, together with the absence of any mitigating factors, and the nature and circumstances of the Defendant's crimes, resulted in sentences that are appropriate for these offenses. Accordingly, we affirm the Defendant's effective sentence of eight years for his convictions.

## B. Consecutive Sentencing

The Defendant contends that the trial court improperly imposed consecutive sentencing based upon a finding that the Defendant is a dangerous offender and that he has an extensive history of criminal activity. The State responds that the trial court properly imposed consecutive sentencing. We agree with the State.

Consecutive sentencing is a matter addressed to the sound discretion of the trial court. *State v. James*, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A trial court may order multiple sentences to run consecutively if it finds, by a preponderance of the evidence, that at least one of the seven statutory factors exists. In this case, the trial court found the following factors applicable:

> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> . . . .
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> . . . .
>
> (6) The defendant is sentenced for an offense committed while on probation;

T.C.A. § 40-35-115(b)(2), (4), (6) (2010). These criteria are stated in the alternative; therefore, only one need exist in order to impose consecutive sentencing.

In addition to these criteria, consecutive sentencing is subject to the general sentencing principle that the length of a sentence should be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." T.C.A. § 40-35-102(1), -103(2) (2010); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

Here, the trial court made a finding that the State had produced sufficient evidence that "the defendant is an offender whose record of criminal activity is extensive," that the Defendant is a "dangerous offender," and that the Defendant was on probation at the time of these offenses. T.C.A. § 40-35-115(b)(2), (4), (6) (2010). The trial court first found that the Defendant's record was extensive and that he was a dangerous offender. The trial court then stated the following:

> But setting those two aside, even if the Court - - in the future, the Court might set those two aside, you still have the fact regarding consecutive sentencing on Number 6 under 40-35-115, which the defendant is sentenced [to] an offense committed while on probation. . . . [The Defendant] was put on probation in March of '08 and this crime was committed in June of 08, three months [later].

It appears that, relying on the fact that the Defendant was on probation when he committed the offenses, the trial court then ordered all of the convictions to run consecutively to one another for an effective sentence of eight years in the Tennessee Department of Correction.

Our review of the record reveals that the Defendant was sentenced to three years of probation for two felony convictions in March 2008. In June 2008, just three months into his probated sentence, the Defendant drove without a license, had cocaine in his system, and recklessly caused an accident which killed the victim. Based upon this evidence, the trial court did not err in ordering consecutive sentences. There was ample evidence in the record supporting the factor relied upon by the trial court to order consecutive sentencing in this case. Thus, the Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE