IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

APRIL 1996 SESSION

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 02C01-9401-CC-00016 |
| | ) | |
| | ) | Obion County |
| | ) | |
| v. | ) | Honorable David G. Hayes, Judge |
| | ) | Honorable William B. Acree, Judge |
| | ) | |
| FREDRICK BURTON ZONGE, | ) | (Especially Aggravated Kidnapping, Especially |
| | ) | Aggravated Burglary, Aggravated Assault |
| | ) | and Theft valued at over $1,000) |
| | ) | |
| Appellant. | ) | |

For the Appellant:

Joseph P. Atnip
District Public Defender
P.O. Box 734
Dresden, TN 38225


Fredick Burton Zonge
(Pro se at Trial)

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
    and
Charlotte H. Rappuhn
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

Thomas A. Thomas
District Attorney General
414 S. Fourth, P.O. Box 218
Union City, TN 38261-0218


OPINION FILED:_____


ESPECIALLY AGGRAVATED KIDNAPPING, AGGRAVATED ASSAULT AND THEFT
CONVICTIONS AFFIRMED; ESPECIALLY AGGRAVATED BURGLARY CONVICTION
REDUCED TO AGGRAVATED BURGLARY


Joseph M. Tipton
Judge

# O P I N I O N

The defendant, Fredrick Burton Zonge, was convicted in a jury trial in the Criminal Court of Obion County of especially aggravated kidnapping, a Class A felony, especially aggravated burglary, a Class B felony, aggravated assault, a Class C felony, and theft of property valued at over one thousand dollars, a Class D felony. He was sentenced as a Range II, multiple offender to thirty-five years, fifteen years, eight years and five years, respectively, to be served concurrently to one another but consecutively to a prior unserved sentence in the custody of the Department of Correction. The defendant was also fined $25,000 for the especially aggravated kidnapping, $15,000 for the especially aggravated burglary, $5,000 for the aggravated assault, and $2,500 for the theft over $1,000. In this appeal as of right, the defendant raises the following issues:

> (1) that the evidence is insufficient to support his convictions for especially aggravated kidnapping and especially aggravated burglary,
>
> (2) that his convictions for especially aggravated kidnapping and especially aggravated burglary violate due process,
>
> (3) that the trial court committed reversible error by forcing him to wear prison garb at his trial, and
>
> (4) that the trial court erred by preventing him from testifying as fully as he desired,[1] and
>
> (5) that the trial court imposed an excessive sentence of thirty-five years for his conviction for especially aggravated kidnapping.

Because we conclude that the evidence is insufficient to sustain the defendant's conviction for especially aggravated burglary, we modify that conviction to aggravated burglary and impose a nine-year sentence and $10,000 fine. We affirm the actions of the trial court in all other respects.

---

[1] Issues (3) and (4) were not originally raised in the defendant's brief, but his present attorney has filed a motion to supplement the brief to include argument on these issues. Although we will address the issues, we do not believe further briefing is necessary for our resolution of them.

The evidence in this case involves an entry into Tim Blackley's and Becky Woodward's residence, the detention of Becky Woodward, and the taking of several items from the home. Lieutenant Jerry Vastbinder of the Obion County Sheriff's Department testified that he was called to investigate a crime scene at the residence on the evening of July 6, 1993. Lieutenant Vastbinder arrived at the scene to find Bob Reavis, Mr. Blackley and Ms. Woodward in a neighboring yard with guns drawn on the defendant who was on the ground. Lieutenant Vastbinder testified that Ms. Woodward identified the defendant as the man who had been in her home a few minutes earlier when she arrived home from work. Lieutenant Vastbinder recalled that there was blood running down Ms. Woodward's neck from an injury to her head. Lieutenant Vastbinder testified that he arrested the defendant and that the defendant did not make any statement at that time. He recalled that Ms. Woodward traveled by private car to the local emergency room where she received treatment for her injuries.

Lieutenant Vastbinder stated that he investigated the scene at the Blackley residence and recovered a bloody .25 mm pistol and a bloody .9 mm ammunition clip from the residence. He also found gun supplies on the floor and remembered that Mr. Blackley's bedroom was in total disarray. He reported that the defendant's bicycle was found abandoned in the corner of the Blackley yard. Lieutenant Vastbinder stated that Ms. Woodward told him that the bicycle was in Mr. Blackley's bedroom when she arrived home. A gym bag containing a cellular phone, calculator, pistol box and other items taken from the Blackley residence were also found in the backyard.

Lieutenant Vastbinder testified that he interviewed the defendant on July 7th, and upon waiving his Miranda rights, the defendant confessed to breaking into the residence. The defendant told Lieutenant Vastbinder that he went to the residence around 3:00 p.m. and entered through an unlocked back door. He said that he wanted

3

to get some things from the house in order to sell them for cash. He told Lieutenant Vastbinder that he drank some tequila and played with Mr. Blackley's police scanner. He said that he collected jewelry, nickels and dimes and eighty-three dollars in cash from the bedrooms. He recounted to Lieutenant Vastbinder that Ms. Woodward surprised him when she arrived home. He admitted that he displayed the .25 mm pistol to her and told her to be quiet. He recalled ordering Ms. Woodward to answer the phone when someone called about a recent car purchase. He told Lieutenant Vastbinder that Mr. Blackley arrived home but could not enter in the front door because the chain was locked. He recalled that he ran to the door, pointed the gun at Mr. Blackley and told him to go away. When he returned to the bedroom, Ms. Woodward was loading a shotgun. He stated that a struggle ensued during which he slapped Ms. Woodward to try to get her away from him. He told Lieutenant Vastbinder that he fled the residence and changed from Mr. Blackley's clothes in a nearby wooded area.

Lieutenant Vastbinder testified that all of the stolen property was recovered. He also stated that the defendant admitted to the theft of the items. He said that the .25 mm pistol was found with one shell in its chamber. On cross-examination, he stated that Ms. Woodward told him that she tried to flee but was scared of the defendant.

Becky Woodward testified that she arrived home on July 6th around 6:00 p.m. and entered through the unlocked back door. She said that she saw the mess in Mr. Blackley's bedroom and walked toward the room. She said that the defendant jumped out from behind the door, with a stocking covering his face, and threatened her with a pistol. She stated that the defendant ordered her to answer the phone and held the gun to her chin as she spoke. She recalled that the defendant was wearing Mr. Blackley's clothes but had on his own shoes. She also recalled that the defendant smelled very bad and had alcohol on his breath.

4

Ms. Woodward stated that when Mr. Blackley arrived home and attempted to enter through the chained front door, she screamed for help and warned him that the defendant had a gun. She said that she was afraid to run behind the defendant as he went to the front door and, instead, went to a bedroom to load the shotgun. She said that the defendant found her loading the shotgun and a struggle resulted during which she was struck twice on the head with the pistol. She said that she finally fell to the floor and acted as if she was unconscious. While on the floor, she heard the defendant gather items from the room and leave through the back door.

Ms. Woodward described her injuries as bruises to her shoulder and back and a knot on her head. She also said that she received a total of four stitches on her head in two different places. She testified that getting the stitches was very painful. On cross-examination, she stated that she did not try to run from the house because she felt that the defendant would shoot her. She also admitted that she had suffered neither broken bones nor a concussion and that she had not experienced any problems associated with the injuries after the removal of the stitches.

Tim Blackley testified that he arrived home a little after 6:00 p.m. on July 6th. He recalled that when he attempted to enter through the front door, he realized that the chain was locked. He stated that he heard Ms. Woodward screaming and that the defendant came to the door and pointed a pistol at him. He ran to his car and called for help on his emergency scanner. He said that several people in a nearby ballpark told him that the defendant left the house and that he and a friend, Bill Reavis, attempted to apprehend the defendant. After ensuring that Ms. Woodward was safely out of the house, Mr. Blackley caught the defendant running through a nearby field and held him until Mr. Reavis arrived. Mr. Blackley identified the items stolen from his home and estimated their total value to be about two thousand dollars. On cross-examination, Mr. Blackley admitted that the defendant had made no threatening

5

overtures toward him when he approached the defendant in the field, but he added that the defendant had to be forced to the ground until Lieutenant Vastbinder arrived and arrested him.

The defendant testified that he has been previously convicted of robbery, burglary and escape. He stated that he worked at Mr. Blackley's car dealership as a car washer but was fired for not showing up for work. He explained that he failed to show up because Ms. Woodward was sexually harassing him.

## I

The defendant contends that the evidence is insufficient to support his convictions for especially aggravated kidnapping and especially aggravated burglary. Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

## A

With respect to his especially aggravated kidnapping conviction, the defendant contends that the state failed to prove that he removed and confined the victim, as charged in the indictment. In relevant part, the indictment charged that the defendant "did unlawfully, feloniously and knowingly remove and confine Becky Woodward so as to interfere substantially with the victim's liberty by means of a deadly weapon in violation of T.C.A. § 39-13-305(a)(1), a class A felony . . .."

6

The definition of especially aggravated kidnapping includes false imprisonment by use of a deadly weapon. T.C.A. § 39-13-305(a)(1). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a). The defendant concedes that a conviction for especially aggravated kidnapping does not require proof of both removal and confinement, but he argues that the wording of the indictment in this case required the state to prove both. We disagree.

Alternate means of committing an offense may be alleged in the same count of an indictment. T.C.A. § 40-13-206(a). Historically, when two means of committing an offense were charged in the conjunctive in a single count of an indictment as part of the same transaction, proof of either sufficed to support a conviction. Halquist v. State, 489 S.W.2d 88, 92-93 (Tenn. Crim. App. 1972); Cornell v. State, 66 Tenn. 520, 521 (1874); State v. Ailey, 50 Tenn. (3 Heisk.) 8, 9 (1870); see also State v. Billy Lee Perry, No. 01C01-9211-CR-00346, Sumner County, slip op. at 5-6 (Tenn. Crim. App. Nov. 18, 1993) (Proof of confinement was sufficient to support aggravated kidnapping conviction based on an indictment that alleged removal and confinement.).

In this case, the indictment sufficiently informed the defendant that he was charged with especially aggravated kidnapping, which only requires proof that he knowingly used a weapon to confine or remove the victim. The proof at trial established beyond a reasonable doubt that the defendant used a gun to confine Ms. Woodward. Thus, we hold that sufficient evidence supports his especially aggravated kidnapping conviction.

7

**B**

As for his especially aggravated burglary conviction, the defendant contends that there is insufficient proof that Ms. Woodward suffered serious bodily injury, an essential element of especially aggravated burglary as it was charged in the indictment. See T.C.A. § 39-14-404. Under T.C.A. § 39-14-404(a), especially aggravated burglary is a burglary of a habitation or building that results in serious bodily injury. "Serious bodily injury" is defined as bodily injury involving:

(A)   A substantial risk of death;

(B)   Protracted unconsciousness;

(C)   Extreme physical pain;

(D)   Protracted or obvious disfigurement; or

(E)   Protracted loss or substantial impairment
of a function of a bodily member, organ
or mental faculty.

T.C.A. § 39-11-106(a)(33). The state contends that it met its burden of proving serious bodily injury beyond a reasonable doubt because the proof at trial established that Ms. Woodward suffered extreme physical pain.

This court addressed a similar argument in State v. Sims, 909 S.W.2d 46 (Tenn. Crim. App. 1995). The victim in Sims received a broken nose, a bruised cheekbone, black and blue eyes, and a laceration across the bridge of her nose. Applying the ejusdem generis canon of statutory construction, this court explained that the extreme physical pain definition of serious bodily injury must be read as applying to the same class of injuries as those causing a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty. Sims, 909 S.W.2d at 49. Because the proof in Sims did not establish the type of extreme physical pain necessary to support a finding of serious bodily injury, this court modified the

8

defendant's conviction from especially aggravated robbery to aggravated robbery. Id. at 50.

In this case, Ms. Woodward suffered bruises to her shoulder and back, a knot on her head, and four stitches. Although Ms. Woodward testified that receiving the four stitches was very painful, the pain associated with her injuries is not of the same degree as that associated with the other classifications of serious bodily injury. Accordingly, the defendant's conviction for especially aggravated burglary must be modified to aggravated burglary.

Also, we need not remand this case for the imposition of a sentence for the aggravated burglary conviction because the record before us is sufficient for us to impose an appropriate sentence. When imposing a sentence, we must consider (1) the evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-38 (Tenn. 1986).

The trial court found the following enhancement factors to exist relative to the burglary: his history of criminal behavior, his possession of a gun during the offense, his commission of an offense involving a high risk to human life, and his parole status at the time of the offense. See T.C.A. § 40-35-114(1), (9), (10) and (13)(B). The trial court found no applicable mitigating factors. The record supports the trial court's findings and we rely upon them in our consideration of an appropriate sentence for the defendant as a Range II, multiple offender.

9

Beginning with the presumptive minimum sentence of six years, see T.C.A. § 40-35-112(b)(3), -210(c), and applying the applicable enhancement factors, particularly the defendant's history of criminal behavior and possession of a firearm, we conclude that the record supports a nine-year sentence for the aggravated burglary conviction, to be served concurrently with the remaining sentences in this case. Also, a fine of $10,000 is imposed.

## II

Next, the defendant relies on State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), to contend that his convictions for both especially aggravated kidnapping and especially aggravated burglary violate due process. In Anthony, our supreme court held that due process prohibits separate convictions for kidnapping and another felony growing out of a single episode when the kidnapping is necessarily incidental to the other felony. The defendant argues that his confinement of Ms. Woodward was essentially incidental to his commission of the especially aggravated burglary. We disagree.

The supreme court reached its decision in Anthony by recognizing that although every robbery involves some detention of the victim, the legislature did not intend for every robbery to constitute a kidnapping. 817 S.W.2d at 306. The court concluded that the kidnapping statute is to be applied so as to protect the due process rights of those accused of both kidnapping and other offenses that necessarily involve the detention of a victim.

Unlike the kidnapping/robbery analysis in Anthony, the kidnapping offense in this case was not essentially incidental to the burglary offense. That is, proof of the aggravated burglary did not necessarily prove unlawful confinement of a victim. Thus, the Anthony rationale does not apply. See State v. Oller, 851 S.W.2d

10

841, 842-43 (Tenn. Crim. App. 1992) (Anthony inapplicable when proving elements of one offense does not necessarily or inherently prove elements of another offense).

## III

The defendant also contends that the trial court violated his due process rights by compelling him to wear prison garb during his trial. After making several other preliminary motions, including a vigorous motion for a continuance, the defendant informed the court that he had not been given the opportunity to change out of his prison clothes.[2] The defendant explained that his trial was originally scheduled to be held four days earlier and said that he had made arrangements for his brother to meet him with his clothes on that date. The defendant complained that he was not notified that his case had been continued. He said that he did not have any other clothes at the prison because the prison only allows inmates to keep articles for thirty days. He said that his brother would have had to travel around 250 miles to deliver him clothes and explained that his brother could not visit him at prison because he was not on the visitation list. He said that he did not put any family members on his visitation list because he did not want them to see him there.

The trial court recognized that the defendant was in prison garb and that his trial had originally been scheduled to begin four days earlier. The court explained that the defendant's trial was originally scheduled for Friday, February 18, 1994, but that the defendant's trial was delayed because another case on the docket took longer than expected. Pursuant to its policy, the court rotated the defendant's case forward to the next available day, Tuesday, February 22.[3] The court said that there was no way to notify the defendant of his new court date and that it had assumed that if the defendant

---

[2] Before jury selection began, the trial court noted that it was aware that defendant had a preliminary matter he wished to raise. The court told the defendant that it would take up that matter after the jury was selected and before it was sworn. At that time, the defendant made several motions and also told the court that he had not been given the opportunity to change out of his prison clothes.

[3] The court explained that the defendant's trial was not held on Monday, February 21, 1994, because that day was President's Day, a state holiday.

11

was prepared to go to trial on the original trial date that he would also be prepared four days later.

In Estelle v. Williams, 425 U.S. 501, 512, 96 S. Ct. 1691, 1697 (1976), the Supreme Court recognized that it is a violation of due process for a state to compel a defendant to stand trial before a jury in prison clothes. The Court reasoned that prison clothing worn at trial is a constant reminder of the defendant's condition and presents an unacceptable risk of influencing a juror's judgment. Id. 425 U.S. at 504-05, 96 S. Ct. at 1693. The Court explained that no state interest was served by forcing a defendant to stand trial in prison garb and that there was no justification for such a practice. Id.

However, the Court also recognized that a defendant may for tactical purposes choose to be tried wearing prison clothes. Accordingly, the Court held that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in . . . prison clothes, the failure to make an objection . . . to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Id. at 512-13, 96 S. Ct. at 1697. The Court concluded that the defendant in Estelle was not compelled to wear prison garb because he did not raise the issue in the trial court.

As Estelle indicates, the focus of our inquiry is on whether the state compelled the defendant to wear prison garb. Unlike the defendant in Estelle, the defendant in this case objected to being tried in prison clothing. In most instances, a trial court must honor a defendant's request to be tried in civilian clothing. Id.; Felts v. Estelle, 875 F.2d 785, 786-87 (9th Cir. 1989); Louisiana v. Anderson, 603 So.2d 776, 778-79 (La. Ct. App. 1992); Carroll v. State, 532 S.W.2d 934, 935 (Tenn. Crim. App. 1975). However, a trial court's failure to honor a defendant's request not to be tried in prison garb does not amount to state compulsion when the defendant has had a

12

reasonable opportunity to appear in other clothes but fails to do so. See Tarpley v. Dugger, 841 F.2d 359, 361 (11th Cir. 1988); Partee v. Illinois, 511 N.E.2d 1165, 1180 (Ill. App. Ct. 1987).

In this case, the trial court concluded that had the defendant been diligent, he could have secured other clothes. We agree with the trial court's assessment. The defendant insisted on representing himself even though the trial court warned him about the perils involved in self-representation. The defendant arrived at trial unprepared to defend against the charges against him. He requested a continuance and complained that he had not had enough time to prepare his defense. It was only after the trial court denied his request for a continuance that the defendant objected to being tried in prison garb. In our view, the defendant's appearance at trial in prison garb is directly attributable to his lack of preparation.

The defendant claimed that he was in prison garb at trial because he was not notified of the change in his court date. However, he admitted that he knew that his trial was scheduled to begin on February 18, and his trial took place on the next available court date, four days later. Having chosen to represent himself, the defendant cannot benefit from his ignorance of court procedure. See, e.g., Cole v. State, 798 S.W.2d 261, 263-64 (Tenn. Crim. App. 1990). The defendant could have made arrangements to have clothes left at the prison or with the sheriff's department, but he failed to do so. Under these circumstances, we cannot say that the defendant was compelled to be tried in prison garb in violation of due process of law.

## IV

The defendant also contends that the trial court erred by limiting his testimony. During his direct examination, the defendant testified that he failed to show up for work because Ms. Woodward was sexually harassing him. Upon objection by

the state to this testimony, an offer of proof was made during which the defendant testified that Ms. Woodward had sexually harassed him. He also stated that Ms. Woodward had arranged for him to stage a burglary and to tie her and Mr. Blackley together to their bed. He contended that the events of July 6th were only a staged act requested by Ms. Woodward for her own excitement.

The trial court concluded that the defendant's offer of proof was "without one scintilla of foundation" and ruled the statements relating to the sexual harassment and staged act to be inadmissible. Although we agree with the defendant that the trial court improperly limited his defense, under the circumstances of this case the defendant is not entitled to relief because he personally waived the issue during the hearing on the motion for a new trial. Ground two of the defendant's motion for a new trial alleged that the trial court erred by limiting his testimony. However, when the trial court sought to hear argument on this ground at the hearing on the motion the defendant voluntarily withdrew the ground, stating that it was "not proper." Thus, the issue is waived.[4] See T.R.A.P. 3(e).

## V

Finally, the defendant contends that the thirty-five-year sentence he received for especially aggravated kidnapping is excessive. The trial court sentenced the defendant as a Range II, multiple offender and applied the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

---

[4] We need not speculate on why the defendant chose to waive this ground for relief. However, we do note that at the defendant's sentencing hearing, two police officers who transported the defendant after his trial testified that the defendant told them that he fabricated the entire story about Ms. Woodward approaching him and requesting that he tie her and Mr. Blackley together because he felt that the trial court would prevent him from testifying to avoid embarrassing Ms. Woodward and Mr. Blackley. One of the officers said that the defendant told him that he designed the story so that this court would grant the defendant relief on appeal.

14

(10) The defendant had no hesitation about committing a crime when the risk to human life was high;

(12) During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim;

(13)(B) The felony was committed while the defendant was on parole from another felony conviction.

See T.C.A. § 40-35-114. The defendant contends that the trial court erred by applying factors (10) and (12). He does not contest his classification as a Range II offender or the enhancement of his sentence based upon his history of criminal behavior or his parole status at the time he committed the offense. See T.C.A. § 40-35-114(1) and (13).

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and

> enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103 and -210 (1990); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d at 236-38.

The sentence to be imposed by the trial court is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c) (1990).[5] Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d) and (e) (1990). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210 (1990), Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

The defendant challenges the trial court's enhancement of his sentence based upon factor (10), the commission of an offense involving a high risk to human life, by arguing that the factor is inherent in the offense. The trial court made the following comments regarding the applicability of factor (10):

---

[5]For Class A felonies committed on or after July 1, 1995, the presumptive sentence is the midpoint of the range. See T.C.A. § 40-35-210(c) (Supp. 1996).

16

> The enhancing factor number ten the court finds would apply
> . . . to all offenses . . .. This involves the invasion of a home,
> but particularly by use of a weapon; and when one is
> committing offenses of this nature, obviously, the risk to human
> life is high. This applies to all offenses.

The defendant contends that the trial court should not have considered his use of a deadly weapon to conclude that he created a high risk to human life because use of a deadly weapon was an essential element of especially aggravated kidnapping, as it was charged in the indictment. We agree relative to the kidnapping victim. See State v. Kern, 909 S.W.2d 5, 7-8 (Tenn. Crim. App. 1993) (factor (10) inapplicable to enhance sentence for especially aggravated kidnapping accomplished with a deadly weapon).

However, given the other circumstances of the offense, we believe that factor (10) does apply. The facts that establish that the defendant created a high risk to human life also demonstrate a greater culpability than that incident to the offense of especially aggravated kidnapping. See Jones, 883 S.W.2d at 603. In addition to using a gun to confine Ms. Woodward, the defendant created a high risk to human life when he waived the gun at Tim Blackley. Even though inherent in the offense, factor (10) is applicable when there is a risk of harm to a person other than the victim. See State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995).

Citing State v. Anthony, the defendant also contends that the trial court violated his due process rights by applying factors (10) and (12) to enhance his especially aggravated kidnapping sentence because the facts supporting the application of these factors were inherent in the especially aggravated burglary offense. However, he does not explain how due process under Anthony would bar the use of enhancement factors for one offense because those factors happen to be necessary elements of another offense. We see no such bar. Moreover, to the extent the defendant's argument is an extension of his argument that both the burglary and

17

kidnapping convictions could not stand under <u>Anthony</u> analysis, we have already rejected his claim.

The legislature has placed only two limitations on a trial court's application of enhancement factors under T.C.A. § 40-35-114. First, the factor must be "appropriate for the offense," and, second, it must not be an essential element of the offense. <u>See</u> T.C.A. § 40-35-114; <u>Jones</u>, 883 S.W.2d at 601. The enhancement factors applied by the trial court in this case meet both requirements. Accordingly, we affirm the defendant's thirty-five-year sentence for especially aggravated kidnapping.

In consideration of the foregoing, the defendant's conviction for especially aggravated burglary is modified to aggravated burglary and a sentence of nine-years and $10,000 imposed. The judgments of conviction for the especially aggravated kidnapping, aggravated assault, and theft are affirmed.

_____
_____Joseph M. Tipton, Judge

CONCUR:

_____
Paul G. Summers, Judge

_____
Jerry L. Smith, Judge

18