# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs at Knoxville May 21, 2013

## STATE OF TENNESSEE v. JEROME JOHNSON

**Appeal from the Criminal Court for Shelby County**
No. 10-07575     Lee V. Coffee, Judge

_____

**No. W2012-01754-CCA-R3-CD  - Filed September 30, 2013**

_____

The Defendant-Appellant, Jerome Johnson, was indicted by a Shelby County Grand Jury for attempted second degree murder in count 1, aggravated assault in count 2, and solicitation to commit the offense of filing a false police report in count 3. Following a jury trial, Johnson was convicted in count 1 of the lesser included offense of reckless endangerment, a Class A misdemeanor; in count 2 of the charged offense of aggravated assault, a Class C felony; and in count 3 of the charged offense of solicitation to commit the offense of filing a false police report, a Class A misdemeanor. The trial court sentenced Johnson as a Range III, persistent offender to fifteen years' imprisonment for the aggravated assault conviction and eleven months and twenty-nine days' imprisonment for the reckless endangerment and solicitation to commit the offense of filing a false police report convictions. The court ordered that the sentences for the reckless endangerment and aggravated assault convictions be served concurrently and ordered that the sentence for the solicitation conviction be served consecutively to the other two sentences for an effective sentence of fifteen years plus eleven months and twenty-nine days. On appeal, Johnson argues that the evidence is insufficient to sustain his convictions. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Stephen C. Bush, District Public Defender; Tony N. Brayton (on appeal) and Jennifer Johnson Mitchell and Patrick A. Newport (at trial), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, Jerome Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Carla L. Taylor, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case stems from the June 25, 2010 beating of the victim. During this incident, the victim sustained a fractured nose, several rib fractures, a punctured and collapsed lung, swelling around her eyes and neck, and bruises and lacerations to her face. She was hospitalized and received treatment for her injuries.

**Trial.** The victim, Sabrina Dantzler-Pitts, testified that on Friday, June 25, 2010, she and Johnson, her boyfriend of approximately a year, went to a party a few blocks from their home. After a couple of hours, the victim left Johnson at the party and returned home. She said that when Johnson came home a few hours later, he verbally abused her before beating her for approximately ten minutes, striking her in the face and ribs with his fists and causing her to fall from the bed to the floor. The victim said that once she fell on the floor, Johnson hit her a few more times before she asked him to leave. Johnson left their home without offering any help for her injuries and did not return until the following Monday morning. When Johnson left, he took the victim's cell phone, which he regularly carried with him, and she had no other means to summon help. At the time of the beating, Johnson was aware that the victim had asthma that required her to complete a breathing machine treatment every night. The victim stated that after Johnson left, she was unable to walk or move, call anyone for help, use the bathroom, get food or water, or use her breathing machine. She said she was in "horrible" pain, which she described as "hard pain" in her lungs, ribs, and neck. She also stated that her eyes were extremely swollen.

The victim said that when Johnson returned home on Monday morning, he hit her a few more times, and she told him that she needed to go to the doctor. Johnson told her that "if [she] didn't say someone jumped on [her], . . . he wasn't gonna get [her] any help." The victim replied that she did not know what she was going to say about the cause of her injuries. At trial, the victim identified Johnson's voice from a recording of his 9-1-1 call requesting an ambulance.

The victim said that when the ambulance arrived, the paramedics helped her out of the house and into the ambulance, which transported her to the hospital. At the hospital, she was given Morphine for pain, was given the breathing treatments for her asthma, and had a

-2-

tube placed in her side for her collapsed lung. She did not remember telling the paramedics or the staff at the hospital what happened to her when she arrived, and she did not remember talking to the police or giving a statement. However, she remembered telling her sister that Johnson was the one who assaulted her. She also remembered identifying, at the hospital, a photograph of Johnson as the person who injured her. The victim stated that prior to the assault, she had no problems with her ribs and no problems with her lungs other than her asthma. She confirmed that she did not have a collapsed or punctured lung prior to the attack. At the hospital, she received treatment for her collapsed lung, ribs, swollen and bleeding eyes, and bruises on her face. The victim stated that she received hospice care for her injuries following her release from the hospital.

On cross-examination, the victim denied that she had provoked Johnson by throwing scalding hot water on him. She acknowledged that Johnson routinely carried her cell phone and had access to her home so that he could come and go when he pleased. She also acknowledged that the day after the assault, she was able to get up from the floor and crawl into bed. She stated that she feared for her life during the days that she was unable to get help following the assault.

Ricky Rials, the paramedic with the Memphis Fire Department who took the victim to the hospital, testified that the 9-1-1 call from the victim's home came in as a fall but that the victim "didn't appear like a fall victim" because "both sides of her face were swollen so bad[ly] her eyes were shut." When Rials arrived at the scene, the victim told him that she had been "jumped" on Saturday night. He and another paramedic walked the victim to the stretcher because her eyes were nearly swollen shut.

On cross-examination, Rials admitted that the victim "was alert and oriented" and was able to communicate with him when he arrived at her house. He said he did not turn on the ambulance's emergency lights during the trip to the hospital because the victim was "stable."

Christy Spence, the victim's nurse at the hospital, testified that the victim was admitted to the emergency room on June 28, 2010, with complaints of neck pain, difficulty breathing, and a headache. Spence said the victim told hospital staff that she had been robbed but waited two days to get treatment for her injuries because she could not remember who had robbed her. While at the hospital, the victim received a CAT scan of her face, neck, chest, and spine as well as several X-rays. These tests showed that she had swelling around both eyes, a fractured nose, swelling of her neck, and several rib fractures, including a rib fracture that punctured her lung causing it to collapse. Spence stated that the victim received stitches for a laceration above her left eye and had a chest tube placed in the hole in her punctured lung. The victim was also placed in a "C" collar to immobilize her so that her fractured ribs would heal. Spence stated that the victim received Dilaudid for pain in the

emergency room and later received Morphine for pain management. The victim was released from the emergency room into the intensive care unit, where she was placed on a machine that breathed for her because her asthma caused her to have "trouble keeping her oxygen levels up." The victim remained at the hospital until July 15, 2010.

On cross-examination, Spence acknowledged that the victim's medical records showed that she had a history of asthma, emphysema with trouble breathing, hepatitis, and liver cancer. However, she stated that the victim received pain medication for her nasal fracture, blackened eyes, and rib fractures. Spence stated that the victim's collapsed lung made her asthma worse. She also stated that the victim's collapsed lung, rib injuries, and asthma had "the potential to be life threatening."

Shannon Smith, a detective with the Memphis Police Department, testified that she was called to the hospital on June 28, 2010, to investigate a robbery involving the victim. However, she said the investigation changed from a robbery to an attempted second degree murder case many days later. Detective Smith stated that because the victim was "heavily sedated[,]" she was unable to talk to her at the hospital." However, she observed the victim's bruises on her face, swollen eyes, and lacerations to her face. Detective Smith identified several pictures of the victim, admitted into evidence, which showed that the victim had swollen eyes, lacerations to her face, swelling of her neck, swelling of both sides of her face, and several bruises to her face on June 28, 2010.

Juawuatta Harris, an employee with the Shelby County Sheriff's Department, authenticated several phone calls made by Johnson from the Shelby County Jail. During these telephone conversations, which were admitted into evidence and played for the jury, Johnson and other individuals discussed the fact that Johnson assaulted the victim only after the victim threw scalding water on him because she was jealous that he was paying attention to another woman.

Tracy Washington, a sergeant with the Memphis Police Department, testified that she became involved in the victim's case when it was transferred from the robbery bureau to the domestic violence unit. Sergeant Washington stated that she first met with the victim on June 29, 2010, and took a photograph of her condition with her cell phone. At the time, she stated that the victim "was swollen like she was beat up pretty bad" and appeared to be in pain. Sergeant Washington took a recorded statement from the victim because she "didn't know if she was gonna live or die." During this statement, the victim told her that Johnson caused her injuries. The victim later identified Johnson in a photograph as the man who attacked her. Sergeant Washington stated that she was not aware of Johnson's filing any police reports around the time of the victim's injury.

Annette Jordan, an employee with the Memphis Fire Department, authenticated the recording that she made of the 9-1-1 call from Johnson on June 28, 2010. During the 9-1-1 call, which was played for the jury, Johnson told the dispatcher that the victim had fallen, perhaps breaking a bone, and that he did not know when the fall occurred.

Darrell Edwards, Johnson's brother, stated that on the weekend the victim was injured, he saw Johnson with "real fresh" burn marks on his chest, stomach, wrist, and behind his ear. On cross-examination, he admitted that he did not know how Johnson got the burn marks.

Tony Neal, Johnson's friend, testified that he encountered Johnson the same weekend the victim was injured and saw that Johnson "was burnt" on his chest, stomach, and chin. On cross-examination, Neal acknowledged that he did not know how Johnson had received these burns. He said he pleaded with Johnson to go to the hospital, but he refused. Neal admitted that he was currently on probation for aggravated assault.

## ANALYSIS

Johnson asserts that the evidence is insufficient to support his convictions for aggravated assault, reckless endangerment, and solicitation to commit the offense of filing a false police report. The State responds that the proof at trial established all the elements of these offenses. Upon review, we conclude that the evidence is sufficient to sustain his convictions.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt."

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960

S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

**I. Aggravated Assault.** Johnson argues that the evidence is insufficient to sustain his conviction for aggravated assault. Specifically, he argues that the State failed to show he caused serious bodily injury to the victim. Aggravated assault, as charged in this case, is defined as follows: "A person commits aggravated assault who: (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and: (A) Causes serious bodily injury to another[.]" T.C.A. § 39-13-102(a)(1)(A). "A person commits assault who: (1) Intentionally, knowingly or recklessly causes bodily injury to another[.]" Id. § 39-13-101(a)(1). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Id. § 39-11-106(a)(2). As relevant to the facts of this case, serious bodily injury is defined as bodily injury involving: "(A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Id. § 39-11-106(a)(34). The State argues that the evidence at trial established that the victim's injuries involved a substantial risk of death, protracted disfigurement, and extreme physical pain. Upon review, we conclude that the evidence is sufficient to establish the serious bodily injury element of aggravated assault.

In support of his claim that he did not cause serious bodily injury to the victim, Johnson asserts that the paramedic who took the victim to the hospital testified that the victim was alert and able to communicate. He also argues that the victim did not sustain a punctured lung and instead developed a concentration of air or gas in her chest cavity creating pressure, which caused the lung to partially collapse. Finally, Johnson argues that although the victim stayed in the hospital for eighteen days, there is no evidence that her extended hospitalization was due to the injuries from the assault rather than due to her pre-existing medical conditions, which included asthma, emphysema with trouble breathing, liver cancer, hepatitis C, and a bacterial infection of the gastrointestinal tract. Despite Johnson's claims to the contrary, the victim's medical records and the evidence presented at trial show that the victim did, in fact, suffer a punctured lung from a fractured rib, which caused the lung to collapse. Accordingly, we conclude that the evidence is sufficient to establish that Johnson caused serious bodily injury to the victim.

**A.  Substantial Risk of Death**.  Johnson argues that there is no proof, expert or otherwise, showing that the injuries actually sustained by the victim involved a substantial risk of death.  For support, he relies on State v. Farmer, 380 S.W.3d 96, 102 (Tenn. 2012), which held that "in determining whether there was a 'serious bodily injury' based on a 'substantial risk of death,' we must look to the injury that occurred rather than the injury that could have occurred or the manner in which it occurred."  Johnson also argues that Farmer emphasized the importance of expert medical testimony in helping the jury determine whether an injury involved a substantial risk of death.  See id. ("Because in many cases a layperson does not have the necessary medical knowledge to determine whether a particular injury involves a substantial risk of death, expert medical testimony is of critical importance in establishing that fact.").  He claims that the victim's actual injuries, which consisted of fractures and a collapsed lung, did not involve a substantial risk of death.  The State responds that Spence, the victim's nurse, testified that the punctured lung "had the potential to be life-threatening" and that a reasonable jury could have found that the victim's injuries involved a substantial risk of death because Johnson, knowing that the victim suffered from asthma and needed daily breathing treatments, left her alone with a punctured lung for two days with no way to call for medical assistance.

Although Spence testified that the victim's collapsed lung, rib injuries, and asthma had "the potential to be life threatening[,]" Spence was never qualified as an expert at trial.  The victim's medical records, which were entered into evidence, show that the victim suffered a punctured and collapsed lung, fractured ribs, fractured nasal bones, swollen eyes, swollen neck, and bruises and lacerations to her face.  However, these records do not specifically answer the question of whether the victim's injuries involved a substantial risk of death.  Moreover, no expert medical testimony was presented at trial to assist in determining whether the victim's injuries involved a substantial risk of death.  See id.  Based on the below analysis and conclusion, we need not answer the question of whether the victim's injuries involved a substantial risk of death because the record shows that the victim suffered serious bodily injury on an alternative basis.

**B.  Protracted Disfigurement.**  Johnson contends, and we agree, that the State failed to prove that the victim was disfigured because of her swollen eyes.  In response, the State argues that the evidence established the victim's eyes were so swollen that she could not see.  In addition, the State argues that the evidence showed the victim was assaulted by Johnson on Friday night and still had swollen eyes when she was interviewed by police the following Tuesday, which supports a finding of serious bodily injury based on protracted disfigurement."

Protracted, as relevant here, means "delayed or prolonged in time."  State v. Derek Denton, No. 02C01-9409-CR-00186, 1996 WL 432338, at *5 (Tenn. Crim. App. Aug. 2,

1996) (citing Merriam Webster's Collegiate Dictionary 939 (10th ed. 1994); American Heritage Dictionary 568 (1975)) (determining the meaning of protracted unconsciousness as a basis for serious bodily injury).  While her medical records note some swelling of her eyelids and generalized facial swelling on June 28, 2010, they do not note swelling of her eyes beyond this date.  In addition, although the photographs of the victim, which were taken three and four days after the assault, show swelling of both eyes, there is no evidence showing that the victim's eyes remained swollen for more than a few days following the attack.  In State v. Eddie Leroy Rowlett, No. M2011-00485-CCA-R3-CD, 2013 WL 749502, at *16 (Tenn. Crim. App. Feb. 26, 2013), this court concluded that the victim's eye, which was swollen and bruised for several days, did not constitute "protracted or obvious disfigurement" establishing serious bodily injury.  In addition, in State v. David Earl Scott, No. E2011-00707-CCA-R3-CD, 2012 WL 5503951, at *7 (Tenn. Crim. App. Nov. 14, 2012), perm. app. denied (Tenn. Mar. 5, 2013), this court held that bruising to the victim's face and neck eleven days after the attack did not constitute protracted disfigurement, stating, "We cannot agree . . . that bruising alone can qualify as disfigurement for purposes of Code section 39-11-106 because that section specifically includes bruising in the definition of 'bodily injury.'"  Accordingly, we conclude that there is insufficient evidence to support serious bodily injury based on the victim's prolonged disfigurement.

**C.  Extreme Physical Pain.**  In addition, Johnson argues that the State failed to present proof that the victim's injuries involved extreme physical pain.  He argues that the victim's injuries in this case involved no more physical pain than the victim's injuries in State v. Sims, 909 S.W.2d 46, 48 (Tenn. Crim. App. 1995), rejected on other grounds by State v. Joseph Oscar Price, III, No. 01C01-9810-CR-00421, 1999 WL 1063414, at *5 (Tenn. Crim. App. Nov. 24, 1999), and State v. Zonge, 973 S.W.2d 250, 253 (Tenn. Crim. App. 1997), cases in which this court held that the victim's injuries did not meet the element of serious bodily injury because the injuries did not involve extreme physical pain.  The State responds that the victim in this case testified that she was in "horrible" pain, which she described as "hard pain" in her lungs, ribs, and neck, and that the photographs of the victim in the hospital depicted "a badly beaten woman."  We agree with the State that the victim suffered serious bodily injury based on extreme physical pain.

In Sims, the victim was struck in the face with a pistol a single time.  909 S.W.2d at 48.  As a result of this blow, she suffered a broken and swollen nose, a bruised cheekbone, two black eyes, and a cut across the bridge of her nose.  Id.  The victim said that her injuries caused her to experience extreme physical pain over her entire face, especially in the area around her nose.  Id.  During the victim's hospital visit, which lasted approximately two hours, a doctor used a surgical band-aid to close the laceration and prescribed anti-anxiety medication but did not prescribe any pain medication.  Id. at 49.  The victim missed five weeks of work because of her injuries.  Id. at 48.  Applying the ejusdem generis canon of

statutory construction to the definition of serious bodily injury, this court concluded that the pain typically associated with a broken nose did not constitute extreme physical pain because it was not "extreme enough to be in the same class as an injury which involves a substantial risk of death, protracted unconsciousness, protracted or permanent disfigurement or the loss or impairment of the use of a bodily member, organ or mental faculty." Id. at 49. Although the court acknowledged "the difficulty of quantifying or measuring pain," it concluded that the evidence was insufficient to support the element of serious bodily injury based on extreme physical pain or protracted or obvious disfigurement and modified the defendant's conviction from especially aggravated robbery to aggravated robbery. Id. at 49-50.

In Zonge, the victim was struck twice in the head with a pistol, causing her to sustain bruises to her shoulder and back and giving her a knot on her head. 973 S.W.2d at 253. The victim testified that she received a total of four stitches in two places on her head, which was very painful. Id. However, she acknowledged that she did not have any problems with her injuries after the stitches were removed. Id. In evaluating whether these injuries involved extreme physical pain, the court stated, "Although [the victim] testified that receiving the four stitches was very painful, the pain associated with her injuries is not of the same degree as that associated with the other classifications of serious bodily injury." Id. at 255. Consequently, the court modified the defendant's conviction from especially aggravated burglary to aggravated burglary. Id.

We note that "the subjective nature of pain is a question of fact to be determined by the trier of fact." State v. Ryan Love, No. E2011-00518-CCA-R3-CD, 2011 WL 6916457, at *4 (Tenn. Crim. App. Dec. 28, 2011). However, this court has upheld a finding of serious bodily injury based on extreme physical pain where the victim suffered cuts, bruises, and swollen eyes, and testified that these injuries caused extreme physical pain. See id. at *5 (concluding that the victim received serious bodily injuries involving extreme physical pain or protracted or obvious disfigurement when he received cuts and bruises to his face, had swollen eyes, had a pain level was "very, very, very high," had numbness in his lips for many months, was prescribed pain medicine and antibiotics for his injuries, and was required to be seen by his doctor for several follow-up visits); State v. Darren Matthew Lee, No. M1999-01625-CCA-R3-CD, 2000 WL 804674, at *4 (Tenn. Crim. App. June 23, 2000) (concluding that the victim suffered from extreme physical pain when he was kicked repeatedly in the face, received two black eyes, had severe swelling of the face, had his lip torn, was unable to work for a week, had headaches for three to four weeks following the assault, was prescribed pain medication, and had pain "more severe than the injuries would normally have occasioned"); State v. Chester Dale Gibson, No. M2005-01422-CCA-R3-CD, 2006 WL 770460, at *12 (Tenn. Crim. App. Mar. 24, 2006) (concluding that the victim experienced extreme physical pain when she sustained repeated blows to her face, two black eyes, fractures to her nasal and orbital areas, a large bruise to her right temple, a bruised lip,

lacerations and bruises to her hands, arms and neck, and testified that she was in extreme physical pain).

Here, the victim testified that Johnson beat her for approximately ten minutes, striking her in the face and ribs with his fists and causing her to fall from the bed to the floor. After she fell to the floor, Johnson hit her a few more times. Following the assault, she experienced "horrible pain[,]" which she described as "hard pain" in her lungs, ribs, and neck. She also stated that her eyes were very swollen. The victim stated that after Johnson left, she was unable to walk or move, call anyone for help, use the bathroom, get food or water, or use her breathing machine. She said that when Johnson returned on Monday morning, he hit her again.

The medical records also corroborate the victim's statement of extreme physical pain. The records show that the victim received treatment for a punctured and collapsed lung, fractured ribs, fractured nasal bones, swollen eyes, swollen neck, and bruises and lacerations to her face. Her records from June 28, 2010, the date she was admitted to the hospital, show that the victim complained of pain in her ribs and her left hand. Her records from July 13, 2010, two days before she was discharged from the hospital, show that the victim complained of pain on the left side of her chest ranking as a 7 out of 10. Moreover, these records show that after spending eighteen days in the hospital, the victim was prescribed Morphine for pain upon her release. She was released from the hospital into hospice care. At trial, Spence, the victim's nurse, testified that the victim was given Morphine and Dalaudid, two strong pain medications, while in the hospital. Given this evidence, we conclude that this case is distinguishable from Sims and Zonge in light of the substantial evidence of this victim's extreme physical pain. Accordingly, we conclude that a reasonable jury could have found sufficient proof to establish that the victim suffered serious bodily injury based on extreme physical pain.

**II. Misdemeanor Reckless Endangerment.** Next, Johnson argues that the evidence is insufficient to sustain his conviction for misdemeanor reckless endangerment. He argues that the victim was not placed in imminent danger of death or serious bodily injury as required by the statute. Johnson notes the paramedic's testimony that the victim was alert, was able to walk to the stretcher, and was in stable condition on the way to the hospital. He also asserts that the victim asked Johnson to leave after the incident, which he did, and that Johnson routinely carried her cell phone with him and did not take it away from the victim intentionally. He claims that this proof shows that the victim was not "helpless or . . . in 'imminent' danger of death or serious bodily injury." See State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999) (stating that the victim "must be placed in a reasonable probability of danger as opposed to a mere possibility of danger").

Here, Johnson was charged with attempted second degree murder but was convicted of the lesser included offense of misdemeanor reckless endangerment. A person commits reckless endangerment "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). A person acts recklessly "when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Id. § 39-11-302(c). This "risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." Id.

The proof at trial established that Johnson's actions placed the victim in imminent danger of death or serious bodily injury. The victim testified that Johnson severely beat her and left her without a means for summoning help for two days. During this time, she experienced "horrible pain[,]" which she described as "hard pain" in her lungs, ribs, and neck. She also stated that her eyes were very swollen. In addition, she was unable to walk or move, call anyone for help, use the bathroom, get food or water, or use her breathing machine. After arriving at the hospital, the victim received treatment for a punctured and collapsed lung, fractured ribs, fractured nasal bones, swollen eyes, swollen neck, and bruises and lacerations to her face. She stayed in the hospital for eighteen days before being released to hospice care. We have already concluded that the evidence supported the fact that she received serious bodily injuries as a result of Johnson's assault and his abandonment of her for two days. Based on this proof, the jury could have also found beyond a reasonable doubt that the victim recklessly engaged in conduct that placed the victim in imminent danger of death or serious bodily injury.

**III. <u>Solicitation to Commit the Offense of Filing a False Police Report.</u>** Finally, Johnson argues that the evidence is insufficient to support his conviction for solicitation to commit the offense of filing a false police report. He claims that although the victim testified she told the paramedics at Johnson's urging that someone jumped her on Saturday night, the victim later told police that Johnson was responsible for her injuries after she was transported to the hospital and was no longer under his influence. He argues that the statute requires that the false report be made to a law enforcement officer and that in this case, the victim made the false report to a paramedic, an employee of the Memphis Fire Department. He also argues that any ambiguity in a criminal statute is construed in favor of the defendant. See State v. Blouvett, 904 S.W.2d 111, 113 (Tenn. 1995) (reiterating that "it has long been a general rule of statutory construction that ambiguity in criminal statutes must be construed in favor of the defendant").

The offense of solicitation is defined as follows:

> Whoever, by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed, is guilty of the offense of solicitation.

T. C. A. § 39-12-102(a). "It is no defense that the solicitation was unsuccessful and the offense solicited was not committed." Id. § 39-12-102(b). The offense of filing a false police report is defined as the following: "It is unlawful for any person to: (1) Initiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern knowing that: (C) The information relating to the offense reported is false[.]" Id. § 39-16-502(a)(1)(C).

Here, the victim testified that Johnson told her "if [she] didn't say someone jumped on [her], . . . he wasn't gonna get [her] any help." The victim told the paramedics and hospital staff that someone had robbed her on Saturday night. Detective Smith testified that she was called to the hospital on June 28, 2010, to investigate a robbery involving the victim. However, she said that many days later, the investigation changed from a robbery to an attempted second degree murder case. Sergeant Washington testified that she became involved in the victim's case when it was transferred from the robbery bureau to the domestic violence unit. Sergeant Washington stated that she met with the victim on June 29, 2010, and took a recorded statement. During this statement, the victim told her that Johnson caused her injuries. Sergeant Washington said the victim later identified Johnson in a photograph as the man who assaulted her.

We agree with the State that it was reasonable for the jury to infer that Johnson's intent in telling the victim that he would not get her medical help unless she claimed she had been "jumped" was to avoid prosecution for his assault of her. Because of the false information the victim gave to the paramedics and staff at the hospital, Detective Smith was sent to the hospital to investigate a robbery involving an unknown assailant rather than an assault involving Johnson, the victim's boyfriend. Moreover, the fact that the victim told the police the truth does not provide Johnson with a defense because "[i]t is no defense that the solicitation was unsuccessful and the offense solicited was not committed." Id. § 39-12-102(b). Given the evidence presented at trial, a reasonable jury could have found beyond a reasonable doubt that Johnson committed the crime of solicitation to commit the offense of filing a false police report.

## CONCLUSION

Because the evidence is sufficient to support Johnson's convictions for aggravated assault, reckless endangerment, and solicitation to commit the offense of filing a false police report, the trial court's judgments are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE