# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 28, 2015

## STATE OF TENNESSEE v. TIFFANY MARIE WEBB

### Appeal from the Criminal Court for Sullivan County
### No. S62130    Robert H. Montgomery, Jr., Judge

### No. E2014-01721-CCA-R3-CD - Filed May 18, 2015

The Defendant, Tiffany Marie Webb, pleaded guilty to three counts of attempted aggravated child abuse and three counts of attempted aggravated child endangerment, which, the trial court merged by agreement into one count of attempted aggravated child abuse. The Defendant agreed to a sentence of nine years, with the trial court to determine the manner of service of the sentence. After a hearing, the trial court ordered the Defendant to serve her sentence in confinement. On appeal, the Defendant contends that the trial court erred when it denied her request for an alternative sentence. After a thorough review of the record and applicable authorities, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Stephen M. Wallace, District Public Defender; William A. Kennedy, Assistant Public Defender, Blountville, Tennessee, for the Appellant, Tiffany Marie Webb.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and Emily Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from burns suffered by the victim, a two-year-old child. At the guilty plea hearing, the trial court informed the Defendant of the charges she faced and of their potential sentences. The Defendant acknowledged understanding the potential consequences

of her guilty pleas. The trial court stated that the Defendant was allowing the trial court to determine the manner of the service of the sentence. The trial court stated that it could deny the Defendant's request for an alternative sentence and order the Defendant to serve her nine years, at 30%, in incarceration.

The State informed the trial court that, had the case gone to trial, the proof would have shown the following:

> [O]n January 21st of 2013 officers were dispatched to Bristol Regional Medical Center. There they spoke with the [D]efendant who presented to the hospital with her [step]son who had severe burns, the son being [2] years of age. The [D]efendant first stated a story about the child burning himself on a stove accidently and then she gave a second story of the child burning himself in a shower accidently. She ultimately confessed to having gotten upset with the child because he had gotten syrup on him. She put him in the shower and held him under the hot water. It was tested. The officers took a thermometer out, tested the water and it got between 125 and 130 degrees and then the [D]efendant also participated in a video showing how she held the child underneath the water and that did occur in Sullivan County, Tennessee.
>
> . . . .
>
> There were numerous second degree burns . . . [o]n a large area of the child's body. . . . The child was burn[ed] on his back, near his ears, his left front side of him. He was covered in burns.

The Defendant agreed that the evidence articulated by the State was the evidence it would have presented against her if the matter went to trial. She then entered her guilty plea to three counts of attempted aggravated child abuse and three counts of attempted aggravated child endangerment. As part of the plea agreement, the trial court merged the convictions into one conviction for attempted aggravated child abuse. It entered the Defendant's sentence of nine years, as a Range I offender, and set her sentencing hearing.

At the Defendant's sentencing hearing, the Defendant's husband, Curtis Webb, testified that the couple had one mutual child, and he also had fathered a child with another woman. This child, who was the Defendant's step-child, was the victim in this case. Mr. Webb testified that the victim's mother had not allowed him to see the victim since this incident. Mr. Webb said that, if the Defendant were released, their mutual child would live with the Defendant's parents. The Defendant would initially not be allowed to be alone with their child. Mr. Webb said that they had discussed the need for the Defendant to attend

parenting classes, anger management classes, and maybe counseling.

Mr. Webb testified that, before this incident, he had never seen the Defendant act violently toward a child. He agreed that her personality had changed since the birth of their child.

The Defendant testified that she had been incarcerated for a year on these charges. She expressed remorse for what she had done saying that it was a "very, very horrible thing." She said it was not something she would ever intentionally do to a child. She felt as if she needed help. The Defendant said that she had been diagnosed with postpartum depression around the time of this incident and had been prescribed medication, but she had not taken her medication. The Defendant expressed her willingness to follow any instructions given to her by the court, if she were released. She said she would abide by any order requiring her to wait for some period of time before seeing her child.

The State offered six photographs displaying the victim's significant burns, and the presentence report. The Defendant's statement was contained in the presentence report. In the statement, she initially said that the child had burned himself on the stove. She gave a second statement that the child burned himself in the shower. Ultimately, the Defendant confessed that she got upset because the victim got syrup on himself and the floor by eating with his hands. She took him to the bathroom telling him that she was going to give him a bath. The Defendant said she was "[s]o upset that [she] kind [of] had an out of body experience and did not realize what she was doing." She stood the victim under the shower and held him there by holding his forearms with her hands. The Defendant said she held the victim under the "very hot water" for twenty to thirty minutes. His legs collapsed and he sat down in the tub. The shower stopped running because the water pressure suddenly dropped. The victim looked up at the Defendant and said, "Momm[y]," and the Defendant "realized that [she] had done something bad." She called her husband and told him that the victim had been burned. Her husband came home from work, and they took the victim to the hospital, where the Defendant lied about the cause of his burns. The Defendant expressed in her statement her desire to get help.

The presentence report also included a letter from the Defendant's probation and parole officer, Ms. Barker, about a conversation that Ms. Barker had with the victim's mother. The victim's mother, who was his custodial caregiver at the time, told Ms. Barker that she "strongly oppose[d]" probation in this matter. The victim's mother said that the Defendant should serve her sentence. She said that the Defendant caused the victim to suffer first and second degree burns. The victim's mother expressed confusion about why the Defendant had done this to her son, who was only two years old at the time. The victim's mother stated that the Defendant did not like her, but stated that this should not have

happened to her son.

Based upon this evidence, the trial court sentenced the Defendant as follows:

I considered the evidence that I heard at the plea, guilty plea and of course today at the sentencing hearing. I have considered the presentence report, also the psychological report and the statements from Bobby Bedwell [the investigating officer] and also from Ms. Barker [the probation and parole officer] so I have that and I've considered what the attorneys have had to say and the arguments that they have made. I've considered the principles of sentencing, nature and characteristics of the criminal conduct involved, the evidence of enhance[ment] and mitigating factors and anything that the [D]efendant may have said here today. Of course, [defense counsel] is correct; she has no prior criminal convictions. She does have some prior criminal behavior, evidenced by the use of marijuana. Of course she wasn't charged with it but she also probably committed the crimes of false report when she was meeting with law enforcement about the case by giving them incorrect information so in that sense its, while it rises out of this same incident, I mean she was lying to law enforcement and that was criminal behavior, too, when she would have been lying to law enforcement about the things that were within the concern of those officers so that would be a factor that I would consider.

One of the enhance[ment] factors [enhancement factor 6] talks about personal injuries inflicted upon or sustained by the victim were particularly great, of course I mean it is a . . . it was charged as aggravated . . . but pled as attempt, so an attempted aggravated child abuse doesn't necessarily require that there be serious bodily injury so I believe under the plea I can find that the personal injuries sustained by the victim were particularly great in this case.

I find number ten, the [D]efendant had no hesitation about committing a crime when the risk to human life was high. Again, it's a situation of placing a child in the water and literally holding him down and causing injuries that this child sustained I do find that situation.

I find, too, of course it's – I don't think any of these would prevent – I find number fourteen, the [D]efendant abused a position of private trust that significantly facilitated the commission of the offense in the sense that you have a child that's two years old. You're the caregiver for the child and treat the child in such a manner it allows you to do something that you might not

-4-

otherwise have access to. The child is obviously required to obey and or otherwise trust the caregiver so that fits in there as well I believe.

Now, when you look at the mitigative factors, let's see, . . . Number eight, the [D]efendant was suffering from a mental or physical condition that significantly reduced the [D]efendant's culpability for the offense. . . . While there has been some evidence that I've received with regard to postpartum issues, I have some psychological that seems to suggest that she has problems with some coping issues and I think that's there, too, and some suggestions in one or two of the statements that she made that she may have . . . "blacked out." So I mean that may be there to a certain degree but I just have a hard time finding that as a major mitigating factor. I mean there may be some mental health issues there that may in some way contribute to it but I'm not sure . . . anyway, I'll consider that to a certain degree as a mitigator. [Factor 12], although guilty of the crime committed the offense under such unusual circumstances its unlikely the sustained intent to violate the law motivated by the criminal conduct, of course the amount of injury, I know the statement in there that it may have taken, it happened in two seconds, I think there's also evidence that it took place over a longer period of time, that the child may have actually even almost passed out at some point in time as a result of that and then the fact that she continued to lie about it to her husband, to law enforcement. I think they let the child go back home with her so if that is a mitigator I just give it very little weight just because of the nature of the circumstances so twelve does not apply.

Non-statutory mitigating factors, lack of criminal record, yes, that applies.

Genuine sincere remorse, I think she obviously having been in custody for a year perhaps understands the circumstances that it's put her in. There is some remorse there.

Excellent work history, no. In fact she tends to lose employment; fired a couple of times, quit at least once so I don't find that.

Voluntary confession of guilt, I mean ultimately she gave a statement but I don't think that mitigator applies in this kind of case were you lied to law enforcement for a period of time so I don't find that mitigator.

. . . .

-5-

You know, the problem that I have here is that you're dealing with a two year old; a two year old that looks up to the caregivers in his life to take responsibility for him and I can't – I mean two years olds also can do things that can be very frustrating to adults that are responsible for those two year olds but in this circumstance putting this child, turning on the water, turning the hot water and then holding the child there, I mean number one, you know, two year olds are – they don't sit still. I mean this child, I can't imagine was sitting still while this was going on. I mean I just can't imagine the child is just saying, "Oh, yeah, this is okay. I don't mind being in 140 or whatever degree water, this is not a problem for me." I mean I just can't imagine under those circumstances and then when I see the amount of damage to this child, to his face, to his back, it's beyond my – and then to lie about it to law enforcement you betrayed the trust of this child and in my opinion this is a case that – I find that under the factors of this case and the injuries to this child and how those injures occurred the enhanc[ement] factors that I've found, that this is a crime in my opinion is especially horrifying and shocking and reprehensible and that it's to an excessive or exaggerated degree and in my opinion the nature of the offense as well as the enhanc[ement] factors that I've already found outweigh in my opinion the mitigating factors that I found and in my opinion granting probation would depreciate the seriousness of the offense and I find because of the nature and circumstances of this criminal conduct in this case that it's not appropriate for me to place you on community correction or probation or split — well, which would be split confinement so I'm going to order you to serve your sentence. Now, the Tennessee Department of Correction has a women's prison. There are lots of programs that are available there and I think that in my opinion that's the better way for this case to proceed based upon what I've found in this case. I don't take my decision lightly. I mean this is my last day as a trial judge and I just — I've really thought about this a lot but I just think that that's what I believe my responsibility as a judge to do in this case is so I'm going to deny your request. And I will point out, too, I mean this is a case that the state mitigated and that's a factor I think that the court can consider as well. I mean she could have received, based upon the evidence and her statement, 15 years at 100%. The state has mitigated it so I think that's a factor that the Court can take into consideration when making a determination about probation or alternative sentence and I did consider that as well.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court "erroneously interpreted and applied applicable law in denying [her] all forms of alternative sentencing." The Defendant states that the trial court abused its discretion by denying her an alternative sentence because there was evidence that the child could have suffered the burns "instantaneously" after being exposed to the hot water and that, therefore, considering the Defendant's mental condition, she "likely did not intend the consequences." She further asserts that her lack of criminal history shows that she is a favorable candidate for an alternative sentence and that such a sentence would further the ends of justice. The State counters that, while the Defendant is eligible for probation, she has failed to show that the trial court abused its discretion when it denied her request. The State notes that the trial court specifically considered the factors mentioned by the Defendant and gave them little weight. The State further contends that the trial court considered the other relevant enhancement factors and the seriousness of the offense for which she was charged when it appropriately made its determination to deny the Defendant's request for an alternative sentence. We agree with the State.

In *State v. Bise*, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions. The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id*. at 707.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 338 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of showing that

the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. *Id.* Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *Goode*, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. *See State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997); *Bingham*, 910 S.W.2d at 456.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. T.C.A. § 40-35-103(5).

In this case, after much consideration, the trial court based its denial of an alterative sentence on multiple factors. It first considered the enhancement factor that the Defendant had prior criminal behavior in the form of marijuana use. *See* T.C.A. § 40-35-114(1). The trial court considered that the personal injuries sustained by the victim were particularly. *See* T.C.A. 40-35-114(6). The trial court found that the Defendant had no hesitation about committing this offense when the risk to human life was high. *See* T.C.A. 40-35-114(10). Further, the trial court found that the Defendant abused a position of private trust. *See* T.C.A. § 40-35-114(14). The trial court gave little weight to the mitigating factors that it found applied in this case.

In further consideration of its denial of the Defendant's request for an alternative sentence, the trial court considered the nature and circumstances of the offense, noting that the two-year-old victim would not have been voluntarily standing still in the scalding water but that the Defendant forcibly held him under the water. It further considered the significant burns to the victim's face and back. The trial court found the crime horrifying, shocking, and reprehensible. The trial court also noted that the Defendant lied to law enforcement on multiple occasions about how the injuries occurred. The trial court also considered that the Defendant was charged for a greater offense and that the evidence supported that charge, which would have been accompanied with a sentence of 15 years at 100%, but that she had pleaded to a lesser included offense. The trial court ultimately denied the probation request finding that an alternative sentence would depreciate the seriousness of this offense. After so doing, the court noted in response to the Defendant's request for "help" that there were multiple programs from which the Defendant could benefit while incarcerated.

We conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve her sentence in confinement. First, the evidence supports the application of enhancement factors (1), (6) and (14). T.C.A. § 40-35-114 (1), (6), (14). The Defendant admitted that she had used marijuana on multiple occasions, supporting factor (1). The pictures showed the severe burns to the victim, which covered a large portion of his body and were scaling and scabbing, supporting factor (6). The Defendant was the victim's caregiver at the time of this incident, she was his step-mother, and he referred to her as "Momm[y]," supporting factor (14). We cannot find that the evidence supports factor (10), that the Defendant committed this crime when the risk to human life was high, and the trial court erred when it applied this enhancement factor. In general, factor (10) applies only where the facts that establish that the defendant created a high risk to human life also demonstrate a greater culpability than that incident to the offense underlying the enhancement. *State v. Jones*, 883 S.W.2d 597, 601 (Tenn. 1994). As a result, where a high risk to human life is inherent in the underlying conviction, enhancement factor (10) applies only if the defendant disregarded a high risk to the life of a person other than the victim. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997). While we conclude there was error, this error has no effect on the trial court's judgment based upon the other factors considered by the trial court.

The trial court properly considered the Defendant's lying to law enforcement as a factor weighing against her receiving probation. "Candor is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against he grant of probation." *State v. Souder*, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citations omitted). The trial court also appropriately considered that the evidence supported the offense for which the Defendant was charged, meaning that her sentence was already mitigated by her plea. *See generally State v. Brent Joseph Price*, No. M2012-02505-CCA-RM-CD, 2013 WL 1007220, at *12 (Tenn. Crim. App., at Nashville, Mar. 14, 2013), *no Tenn. R. App. P. 11 application filed*. The trial court made the appropriate considerations when denying the Defendant an alternative sentence, and she has not established that the trial court abused its discretion. The Defendant is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the trial court did not abuse its discretion when it sentenced the Defendant. Accordingly, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE