IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 28, 2020 Session

**STATE OF TENNESSEE V. KEVIN LANE**

**Appeal from the Criminal Court for Knox County**
**No. 111396    Bobby R. McGee, Judge**

FILED

JUL 2 3 2020

Clerk of the Appellate Courts
Rec'd by _____

**No. E2019-01293-CCA-R3-CD**

Kevin Lane, Defendant, was indicted for multiple offenses stemming from incidents that occurred at the home of his mother and involved both Defendant's mother and brother. Prior to trial, Defendant filed a motion in limine seeking to prohibit the State from utilizing Defendant's prior convictions for impeachment. After a jury trial, Defendant was found guilty of three counts of aggravated criminal trespass, two counts of assault, one count of theft, five counts of domestic assault, one count of robbery, and one count of carjacking. As a result of the convictions, he was sentenced to an effective sentence of twenty-three years. After the denial of a motion for new trial, Defendant filed a timely notice of appeal. On appeal, the following issues are presented for our review: (1) whether the evidence is sufficient to support the convictions; and (2) whether the trial court erred by permitting the State to introduce evidence of prior bad acts in violation of Tennessee Rule of Evidence 404(b). After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Forrest L. Wallace, Knoxville, Tennessee, for the appellant, Kevin Lane.

Herbert H. Slatery III, Attorney General and Reporter; Cody N. Brandon, Assistant Attorney General; Charme P. Allen, District Attorney General; and Andrea Kline and Lealand Price, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

Defendant was indicted by a Knox County Grand Jury in a multi-count indictment after a series of events that took place on May 4, 2017, at the residence of Gloria and Keith Lane,[1] Defendant's mother and brother. The indictment charged Defendant with the following:

| Count | Offense | Victim |
|-------|---------|--------|
| 1 | Aggravated Burglary | Gloria and Keith Lane |
| 2 | Aggravated Burglary (theft) | Gloria and Keith Lane |
| 3 | Abuse of an Adult | Keith Lane |
| 4 | Domestic Assault (bodily injury) | Keith Lane |
| 5 | Domestic Assault (fear bodily injury) | Keith Lane |
| 6 | Theft (car keys) | Gloria Lane |
| 7 | Abuse of an Adult (bodily injury) | Gloria Lane |
| 8 | Domestic Assault (bodily injury) | Gloria Lane |
| 9 | Domestic Assault (fear of bodily injury) | Gloria Lane |
| 10 | Aggravated Burglary | Gloria and Keith Lane |
| 11 | Abuse of an Adult | Keith Lane |
| 12 | Domestic Assault (caused bodily injury) | Keith Lane |
| 13 | Domestic Assault (fear of bodily injury) | Keith Lane |
| 14 | Robbery (related to car keys) | Gloria Lane |
| 15 | Carjacking | Gloria Lane |

Prior to trial, Defendant filed a motion in limine seeking to exclude evidence that the State "intend[ed] to offer or contemplate[d] offering pursuant to Rules 608(a), 608(b)(3) and 609(a)(3) of the Tennessee Rules of Evidence." Defendant also filed a motion seeking a hearing on the "admissibility or exclusion of any 404(b)-type evidence." The trial court reserved ruling on the motion until trial. The State filed a

---

[1] Because Defendant and his brother have similar names, we will refer to the victim, Keith Lane, by his first name. We mean no disrespect to the victim but choose to utilize his first name for clarity.

notice of impeachment, giving notice pursuant to Rule 609 of its "intent to use certain prior convictions for impeachment." The notice listed 39 prior convictions spanning the time period from 1984 to 2012.

The trial court held a hearing on the pretrial motions. At that hearing, the State conceded that the majority of Defendant's convictions were beyond the "ten-year kind of reach back" and that they would not be permitted to "ask on cross-examination [about those convictions] unless the door was opened in some way." The State argued that three of Defendant's prior convictions could be utilized for impeachment. The trial court agreed and excluded proof of Defendant's prior convictions for impeachment purposes with the exception of three convictions, including a theft conviction from 2009, a burglary conviction from 2007, and an aggravated assault conviction from 2012.

With respect to Defendant's motion to exclude 404(b) evidence, counsel for Defendant explained that this "relates to notice of impeachment," "a series of orders of protection," and "allegations of substance abuse." Counsel explained that this was a "family saga" involving a history of orders of protection that went back 25 years, all with a "similar factual basis." The trial court decided to defer ruling on these matters to trial because it was not clear "what context these things may be brought up."

At trial, the State sought to introduce a ten-year order of protection that was still in place at the time the incidents that led to the indictment herein occurred. The order of protection at issue prohibited Defendant from being at the residence where the incident occurred. Counsel for Defendant objected. The trial court determined that "whether or not [Defendant] had permission to be on those premises [wa]s very material and important to the question of burglary" and "relevant on that point." The trial court determined that in order "to explain the fear and apprehension the victims had, . . . , that [Defendant's] conduct and the Orders of Protection that were taken - - at least one that's in and another one that I've agreed to let in - - to explain the experience the victims were having [wa]s a material issue that [wa]s not propensity by itself." The trial court further explained, "[i]t [wa]s another separate material issue and this evidence [wa]s relevant with respect to that issue, and the Court d[id] find that . . . the probative value of the evidence d[id] outweigh any danger of unfair prejudice to [Defendant] to commit that finding on the record." Ultimately, the trial court permitted the State to admit three orders of protection into evidence. All three orders of protection prohibited Defendant from contact with Ms. Lane and Keith at the time of the incidents.

Proof at trial revealed that in May of 2017 Ms. Lane was in her late-70s. She lived in a home in Knox County and suffered from rheumatoid arthritis, Type 2 diabetes, hypertension, and right foot neuropathy. The neuropathy affected the way that she walked. Her son Keith also lived at the home. Keith, who was in his 50s at the time,

- 3 -

suffered from systemic lupus and had suffered a stroke. He typically used either a cane or a walker when he walked. Ms. Lane had two cars at the house, a 2007 Toyota Camry, and an inoperable Lincoln that belonged to her ex-husband. The Lincoln was kept under a tarp in the driveway.

In the weeks leading up to the incidents of May 4, Defendant had been staying at his mother's house and slept in a spare room on a pull-out couch. Defendant had not stayed at the house for a number of years. He did not have a key to the house or know the code to the alarm system. Ms. Lane explained that there had been problems with Defendant before and that she had gotten an order of protection against Defendant in the past. Despite their history of family problems, Ms. Lane explained that she loved her son and let him come back home. Ms. Lane admitted that she provided small amounts of cash to Defendant when he was staying at her home. She explained that she thought Defendant was staying at the home on a temporary basis. Ms. Lane recalled that Defendant eventually started to demand money and often wanted to use the car. Ms. Lane thought that Defendant might be abusing drugs and explained that she did not feel entirely safe with Defendant at the home so she asked him to leave on May 3. She told him that he "had to go, and not to come back." Ms. Lane tried to give Defendant contact information for treatment facilities but Defendant did not take advantage of the information.

In the early morning hours of May 4, Ms. Lane was awakened when Keith yelled out for her help. Defendant used Keith's cane to threaten him, and Defendant hit Keith in the chest with his fist. Keith explained that he was afraid because Defendant had hurt him on a prior occasion in June 2011. On this occasion, Defendant came into Keith's room and hit Keith "a bunch of times" in the face and on the chest. As a result of Defendant's actions in 2011, Keith obtained an order of protection against Defendant.

Ms. Lane responded to the shouts from Keith by getting out of bed and heading toward Keith's bedroom. She met Defendant in the hallway. She was "[s]cared, puzzled [and] angry" that Defendant was in her house. She went to Keith's bedroom, made sure Keith was safe and returned to her own bedroom to call 911. Ms. Lane thought she heard Defendant leave through the garage.

When the police arrived, they could not determine how Defendant entered the home. Ms. Lane later discovered that a window screen had been removed from a broken bathroom window. The curtain on the window was torn and there was blood smeared on the curtain. She surmised that Defendant entered the house through the bathroom window. The police did not find Defendant. While the police were at the house, Ms. Lane discovered that there was a key broken off in the ignition of the Camry. Ms. Lane explained that Defendant had not been permitted to use the Camry for "many" years. Ms.

- 4 -

Lane had driven the vehicle earlier the day before but remembered placing the key inside her purse "under the pillow on the other side of [her] bed." She was able to get the broken key out of the ignition. Ms. Lane went back to sleep after the police left. When she awoke sometime later that morning, she went outside to get the mail and the newspaper. Still uneasy about the events of early that morning, she asked Keith to watch her as she walked across the street to the mailbox. Ms. Lane got the mail and the paper and started to walk back toward the house. She stopped at the Lincoln in the driveway and lifted the cover on the car. Defendant was inside the vehicle. He sat up. Ms. Lane was frightened and began to walk quickly toward the house. Defendant got out of the Lincoln, chased her down, and pushed her as she reached the top of the handicap ramp in the front of the home. Ms. Lane fell into the side of the house but was able to catch herself before she fell to the ground. She twisted and smashed her glasses in the process and felt "helpless." Defendant went inside the house, hitting Keith and knocking him to the ground. Ms. Lane went inside the house after Defendant. Defendant yelled at Ms. Lane, and demanded that she start the Camry. Ms. Lane refused to honor Defendant's demand, claiming that she did not have a key even though she had the spare key to the Camry in her pocket. Defendant pushed Ms. Lane down the hallway of the home, grabbed her arm, and forced her toward the garage. Ms. Lane claimed that she was "helpless" and was certain that Defendant "was going to hurt [her] more." Ms. Lane tried to defend herself as Defendant pulled her into the garage.

Sometime during her tussle with Defendant, the spare key to the Camry fell out of Ms. Lane's pocket onto the floor of the garage. Defendant demanded that she pick up the key and start the car. Ms. Lane finally complied when Defendant told her to "get in here and start the car." Once the car started, Defendant jerked Ms. Lane out of the car, got behind the wheel, and drove off. The car contained Keith's walker and several canes. Once Defendant was gone, Ms. Lane called 911.

When the police arrived, the officer showed her how to place a bar on the bathroom window to prevent entry. The officer also suggested she apply for an order of protection. Ms. Lane went to the Family Justice Center to get an order of protection and discovered that the order of protection she had gotten several years prior was still in effect. Someone at the Family Justice Center took photographs of Ms. Lane's injuries which included bruises and scratches on her arms and injuries to her thigh.

Defendant brought the car back to Ms. Lane's home the next day. When he returned the car, he told Ms. Lane that the car was out of gas. Ms. Lane got her purse and got into the car with Defendant. They went to a gas station and put gas in the car. Ms. Lane contemplated notifying the police, but she did not see any officers while they were out, so she returned home.

Defendant was not arrested until May 8 after spending the night at Ms. Lane's home. Defendant did not testify at trial. He called Officer Ian Green to testify on his behalf. Officer Green responded to the call at Ms. Lane's house on May 4. He admitted that it took several hours for officers to respond to the call. Once he and other officers arrived, they determined that nothing was out of the ordinary at the house. He recalled the broken bathroom window. He did not recall any visible injuries on Ms. Lane or Keith, and both declined the offer to call an ambulance. Officer Green was under the impression that the victims were reluctant to tell the officers the entire story because it was a family issue but admitted that he did not follow typical procedure because he failed to separate the witnesses at the scene.

The jury found Defendant not guilty of abuse of an adult in count 11 and domestic assault in count 12. Defendant was found guilty of the lesser-included offense of aggravated criminal trespass in counts 1, 2, and 10; six counts of domestic assault in counts 3, 4, 5,7 8, 9, and 13; one count of theft in count 6; one count of robbery in count 14; and one count of carjacking in count 15. At a sentencing hearing, the trial court sentenced Defendant as a Range III persistent offender to an effective sentence of twenty-three years. The trial court merged several convictions – count 10 (aggravated criminal trespass) merged with count 2 (aggravated criminal trespass); count 4 (domestic assault) and count 5 (domestic assault) merged with count 3 (domestic assault); and count 8 (domestic assault) and count 9 (domestic assault) merged with count 7 (domestic assault). After the denial of a motion for new trial, this appeal followed.

*Analysis*

*Evidence Admitted pursuant to Tennessee Rule of Evidence 404(b)*

On appeal, Defendant first challenges the trial court's decision to permit the State to introduce evidence of prior bad acts. Specifically, Defendant argues that it was "highly prejudicial to admit evidence of other crimes, wrongs, or acts that took place prior to and contemporaneously with the instant offense," namely the orders of protection that were in effect on the date of the offense, allegations of Defendant's substance abuse, and Defendant's prior convictions of theft, burglary, and aggravated assault. The State, on the other hand, argues that the trial court did not abuse its discretion in admitting evidence of Defendant's actions because the evidence was "highly probative of material issues and not unfairly prejudicial." The State further argues that if there was any error, it was harmless.

The threshold issue with regard to the admissibility of evidence is relevance. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence." Tenn. R. Evid. 401. "Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Even if evidence is deemed relevant, it may be still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Additionally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Tenn. R. Evid. 404(a). However, "[e]vidence of other crimes, wrongs, or acts" may be admissible for "other purposes," such as proving identity, criminal intent, or rebuttal of accident or mistake. Tenn. R. Evid. 404(b); *State v. Thacker*, 164 S.W.3d 208, 239-40 (Tenn. 2005). Under Rule 404(b), the evidence must be excluded "if its probative value is outweighed by the danger of unfair prejudice." Tenn. R. Evid. 404(b)(4).

We must first determine whether the admissibility of the evidence should have been analyzed under Rule 403 or 404(b). "Rule 403 is a rule of admissibility, and it places a heavy burden on the party seeking to exclude the evidence." *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). On the other hand, most authorities suggest that trial courts take a "restrictive approach of 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." Neil P. Cohen et al., *Tennessee Law of Evidence* § 4.04[8][e] (4th ed. 2000). Traditionally, courts of this state have viewed any testimony of prior bad acts by a defendant as inadmissible when used as substantive evidence of guilt of the crime on trial. *State v. Parton*, 694 S.W.2d 299, 302-03 (Tenn. 1985). In those instances where the prior conduct or acts are similar to the crimes on trial, the potential for a prejudicial result increases. *State v. Bordis*, 905 S.W.2d 214, 232 (Tenn. Crim. App. 1995).

As set forth above, Rule 404(b) applies only to prior "bad acts," *State v. Clark*, 452 S.W.3d 268, 289 (Tenn. 2014), and testimony about behavior which is relevant and which does not constitute a crime or bad act is not analyzed under the Rule. *State v. Reid*, 213 S.W.3d 792, 814 (Tenn. 2006) (determining that possession of a gun, standing alone, does not constitute a crime and therefore evidence of ownership of a gun is not a bad act). If the behavior is indeed a bad act, we must then determine whether the trial court substantially complied with Rule 404(b)'s procedural requirements prior to admitting the evidence in order to determine the appropriate standard of review. *DuBose*, 953 S.W.2d at 652 (applying abuse of discretion standard when trial court substantially complies with the procedural requirements of Rule 404(b)(1)-(4)).

## A. Orders of Protection

First, Defendant complains that the trial court improperly determined that prior orders of protection were admissible under 404(b). Here, in order to establish that

Defendant committed an aggravated burglary, the State needed to prove that Defendant entered Ms. Lane's home without her effective consent. To do so, the State sought to introduce three orders of protection which all prohibited Defendant from having contact with Ms. Lane and Keith. The trial court held a hearing out of the jury's presence. After listening to argument, the trial court determined that the orders of protection were relevant to show Defendant did not have Ms. Lane's consent to enter the home. The trial court also determined that the probative value of the orders of protection outweighed the risk of unfair prejudice because the content of the orders gave the jury more information than they already had about Defendant's prior behavior. Ms. Lane testified on cross-examination that Defendant had already committed a trespass. This incident led to one of the orders of protection. Moreover, Keith testified that Defendant assaulted him on a prior occasion, leading to another one of the orders of protection. The third order revealed that Defendant had previously violated an existing order of protection.

In our assessment, the trial court herein substantially complied with the procedural requirements of 404(b), so our review is limited to whether the admission of the evidence qualified as an abuse of discretion. Our supreme court recently stated that the abuse of discretion standard of review is a "less rigorous review" of a trial court's decision and does not permit this Court to substitute its judgment for that of the trial court. *State v. McCaleb*, 582 S.W.3d 179, 185 (Tenn. 2019) (quoting *Lee Med., Inc.*, 312 S.W.3d at 524). On review, courts should determine "(1) whether the factual basis for the [trial court's] decision is properly supported by evidence in the record, (2) whether the [trial] court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the [trial] court's decision was within the range of acceptable alternative dispositions." *Id.* (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)) (citations omitted). The trial court did not abuse its discretion in admitting the orders of protection as evidence.

### B. Keith's Testimony About Prior Assault

Next, Defendant complains that the trial court permitted Keith to testify about a specific instance of assault that occurred in 2011 prior to the incidents at issue at trial. In order to prove that Defendant committed domestic assault pursuant to Tennessee Code Annotated section 39-11-222(b), the State had to prove that Defendant intentionally or knowingly caused Keith to fear imminent bodily injury. The trial court determined, outside the presence of the jury, that a material issue existed and that Keith's testimony was probative as to his state of mind. The trial court also determined that the probative value of the testimony outweighed any prejudice as long as the testimony was limited to that specific instance. Again, the trial court followed the proper procedure, and we decline to determine that the trial court abused its discretion. *See State v. Smith*, 868 S.W.2d 561, 574 (Tenn. 1993) (finding that "violent acts indicating the relationship

- 8 -

between the victim of a violent crime and the defendant prior to the commission of the offense are relevant to show [the] defendant's hostility toward the victim, malice, intent, and a settled purpose to harm the victim").

### C. Ms. Lane's Testimony About Defendant's Suspected Drug Use

Defendant next complains that the trial court erred by permitting Ms. Lane to testify that Defendant's behavior led her to believe that Defendant was using drugs. Ms. Lane explained that her suspicions were part of the reason she asked Defendant to leave her home. It does not appear that Defendant objected to this testimony at trial. Therefore, he has waived the issue on appeal. Tenn. R. App. P. 36(a).

### D. Introduction of Prior Felony Convictions

Lastly, Defendant complains that the trial court erred in admitting his prior felony convictions for theft, burglary, and aggravated assault. Under Rule 609, a trial court utilizes a balancing test to determine whether the offense is relevant to the credibility of the accused. *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). If the trial court concludes that the offense is relevant to the credibility of the accused, it must also assess whether the crime underlying the impeaching conviction is substantially similar to the offense for which the accused is charged. *State v. Waller*, 118 S.W.3d 368, 373 (Tenn. 2003); *Mixon*, 983 S.W.2d at 673 (quoting Neil P. Cohen et al. *Tennessee Law of Evidence* § 6.09.09, at 376 (3rd ed. 1995)). We review a trial court's decision to admit evidence of prior convictions pursuant to Tennessee Rule of Evidence 609 under an abuse of discretion standard. *Waller*, 118 S.W.3dd at 371. Here, the trial court properly determined prior to trial that pursuant to Tennessee Rule of Evidence 609, these three prior felony convictions would "most likely" be admissible to impeach Defendant if he chose to testify at trial. The trial court did not admit the convictions into evidence. Defendant is not entitled to relief.

### Sufficiency

Defendant also argues that the evidence was insufficient to support his convictions for robbery and carjacking. Defendant does not challenge the remaining convictions. While the caption for this issue states that the evidence was "insufficient to sustain a guilty verdict for all convictions" the body of the argument on this issue discusses only the convictions for robbery and carjacking. Thus, in our view, by failing to present argument on the matter he has waived review of the sufficiency of the remaining convictions. *See* Tenn. Ct. Crim. App. R. 10(b). Specifically, Defendant argues that his actions constituted a theft, if anything at all, because he returned the car the next day and

"did not deprive his mother of it." Defendant contends that his conviction for carjacking was not proven by the facts at trial because he did not use force and/or intimidation when he took the car from his mother. The State disagrees, first noting that Defendant fails to properly challenge any of the convictions save the robbery and carjacking, and, in any event, the evidence was sufficient to support those convictions.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence of putting the person in fear." T.C.A. § 39-13-401. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-1-4-103(a). It is possible to commit robbery "by asserting control over the property without any degree of asportation or physical taking." *State v. Nix*, 922 S.W.2d 894, 900-01 (Tenn. Crim. App. 1995). Carjacking is the intentional or knowing taking of a motor vehicle from the possession of another by use of force or intimidation. T.C.A. § 39-13-404(a)(2). Actual possession can be established when the person possessing the car "is in actual possession of his or her car" or is "in, on, or immediately adjacent to it." *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007). "Historically, when two means of committing an offense were charged in the conjunctive

- 10 -

in a single count of an indictment as part of the same transaction, proof of either sufficed to support a conviction." *State v. Zonge*, 973 S.W.2d 250, 254 (Tenn. Crim. App. 1997).

Here, Defendant broke off a key in the ignition of the Camry, repeatedly asked Ms. Lane for her spare key, and dragged her down the hallway toward the garage. Sometime during the tussle, the key fell out of Ms. Lane's pocket. Defendant threatened to hurt her if she did not give him the key and eventually demanded that Ms. Lane start the car. Once Ms. Lane complied by starting the car, Defendant yanked her out of the car and drove off. Defendant argues that he merely committed a theft and that he just wanted to "borrow" the car. The jury heard the evidence and determined Defendant was guilty of robbery. The evidence was sufficient to support this conviction.

Likewise, the evidence was sufficient to support the conviction for carjacking. Not only did Defendant drag Ms. Lane down the hallway toward the garage, once Ms. Lane started the car, Defendant yanked her out of the driver's seat and drove away. Ms. Lane testified that she was afraid and felt helpless. Defendant was charged with the use of force or intimidation to commit the carjacking. Thus, proof that he used either force or intimidation would suffice to support the conviction. Defendant's assertion that Ms. Lane "voluntarily" entered the garage and turned over the car of her own volition clearly was not accepted by the jury. This was their prerogative. Defendant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 11 -